Date:   12/3/2020 **18th Judicial District Court** User: REMOTEKICS

Time:   02:48 PM ROA Report

Page 1 of 3 Case: 2020-CV-001825-OT

Current Judge: Kevin M Smith, Div. 12

BLU NIGHTCLUB, et al  vs.  MAYOR WHIPPLE, et al

Other

| Date | | Judge |
|---|---|---|
| 11/25/2020 | Plaintiff: BLU NIGHTCLUB Attorney of Record  David Lawrence Miller | Kevin M Smith, Div. 12 |
| | Plaintiff: GREIVING, DARREN Attorney of Record  David Lawrence Miller | Kevin M Smith, Div. 12 |
| | Plaintiff: CLUB INDIGO OLD TOWN LLC DBA INDUSTRY OLD TOWN Attorney of Record  David Lawrence Miller | Kevin M Smith, Div. 12 |
| | Plaintiff: STEVEN, BRADLEY Attorney of Record  David Lawrence Miller | Kevin M Smith, Div. 12 |
| | Plaintiff: VORSHAY'S COCKTAIL Attorney of Record  David Lawrence Miller | Kevin M Smith, Div. 12 |
| | Plaintiff: PETERS, STEVEN Attorney of Record  David Lawrence Miller | Kevin M Smith, Div. 12 |
| | Plaintiff: THE COWWBOY INN Attorney of Record  David Lawrence Miller | Kevin M Smith, Div. 12 |
| | Plaintiff: AHRENS, JEANNIE Attorney of Record  David Lawrence Miller | Kevin M Smith, Div. 12 |
| | Plaintiff: PARTY EXPRRESS, LLC Attorney of Record  David Lawrence Miller | Kevin M Smith, Div. 12 |
| | Plaintiff: BROZ, DALLAS Attorney of Record  David Lawrence Miller | Kevin M Smith, Div. 12 |
| | Plaintiff: WICHITA'S BALLROOM Attorney of Record  David Lawrence Miller | Kevin M Smith, Div. 12 |
| | Plaintiff: HSU, CHAOMIN Attorney of Record  David Lawrence Miller | Kevin M Smith, Div. 12 |
| | Plaintiff: AUGUSTINO BREWING COMPANY Attorney of Record  David Lawrence Miller | Kevin M Smith, Div. 12 |
| | Plaintiff: IACOPELLI, AUGUSTINE Attorney of Record  David Lawrence Miller | Kevin M Smith, Div. 12 |
| | Plaintiff: THE STOP Attorney of Record  David Lawrence Miller | Kevin M Smith, Div. 12 |
| | Plaintiff: BRINKMAN, ALAN Attorney of Record  David Lawrence Miller | Kevin M Smith, Div. 12 |
| | Plaintiff: THE RUSTY NAIL Attorney of Record  David Lawrence Miller | Kevin M Smith, Div. 12 |
| | Plaintiff: IVY, KRISTI Attorney of Record  David Lawrence Miller | Kevin M Smith, Div. 12 |
| | Plaintiff: A & J'S MUSIC ROOM BAR & GRILL Attorney of Record  David Lawrence Miller | Kevin M Smith, Div. 12 |
| | Plaintiff: AGNER, ART Attorney of Record  David Lawrence Miller | Kevin M Smith, Div. 12 |
| | Plaintiff: REVOLUTION LOUNGE Attorney of Record  David Lawrence Miller | Kevin M Smith, Div. 12 |
| | Plaintiff: OKUMURA, KYLE Attorney of Record  David Lawrence Miller | Kevin M Smith, Div. 12 |
| | Plaintiff: SUTTER, NICK Attorney of Record  David Lawrence Miller | Kevin M Smith, Div. 12 |
| | Plaintiff: McCOY, JOSIAH Attorney of Record  David Lawrence Miller | Kevin M Smith, Div. 12 |
| | VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF PLE: Petition | Kevin M Smith, Div. 12 |
| 11/30/2020 | Affidavit of Chaomin Hsu     AFF: Affidavit (Generic) | Kevin M Smith, Div. 12 |
| | Affidavit of Bradley Steven     AFF: Affidavit (Generic) | Kevin M Smith, Div. 12 |
| | Affidavit of Dallas Broz     AFF: Affidavit (Generic) | Kevin M Smith, Div. 12 |
| | Affidavit of Augustine Iopcalli     AFF: Affidavit (Generic) | Kevin M Smith, Div. 12 |
| | Affidavit of Alan Brinkman     AFF: Affidavit (Generic) | Kevin M Smith, Div. 12 |
| | Affidavit of Kristi Ivy     AFF: Affidavit (Generic) | Kevin M Smith, Div. 12 |
| | Affidavit of Art Agner     AFF: Affidavit (Generic) | Kevin M Smith, Div. 12 |

Date:   12/3/2020               **18th Judicial District Court**            User: REMOTEKICS
Time:  02:48 PM                     ROA Report
Page 2 of 3               Case: 2020-CV-001825-OT

Current Judge: Kevin M Smith, Div. 12

BLU NIGHTCLUB, et al  vs.  MAYOR WHIPPLE, et al

Other

| Date | | Judge |
|---|---|---|
| 11/30/2020 | Affidavit of Kyle Okumura     AFF: Affidavit (Generic) | Kevin M Smith, Div. 12 |
| | Affidavit of Jeannie Ahrens     AFF: Affidavit (Generic) | Kevin M Smith, Div. 12 |
| | Affidavit of Steven Peters     AFF: Affidavit (Generic) | Kevin M Smith, Div. 12 |
| | Affidavit of Darren Greiving     AFF: Affidavit (Generic) | Kevin M Smith, Div. 12 |
| | Summons: Issued  on 11/30/2020;  to COUNCILMAN JOHNSON on 11/30/2020; Assigned to Process Server. Service fee of $0.00. | |
| | Summons: Issued  on 11/30/2020;  to MAYOR WHIPPLE on 11/30/2020; Assigned to Process Server. Service fee of $0.00. | |
| | Summons: Issued  on 11/30/2020;  to COMMISSIONER MEITZER on 11/30/2020; Assigned to Process Server. Service fee of $0.00. | |
| | Summons: Issued  on 11/30/2020;  to COMMISSIONER CRUSE on 11/30/2020; Assigned to Process Server. Service fee of $0.00. | |
| | Summons: Issued  on 11/30/2020;  to COMMISSIONER DAVID DENNIS on 11/30/2020; Assigned to Process Server. Service fee of $0.00. | |
| | Summons: Issued  on 11/30/2020;  to COMMISSIONER O'DONNELL on 11/30/2020; Assigned to Process Server. Service fee of $0.00. | |
| | Summons: Issued  on 11/30/2020;  to COUNCILWOMAN TUTTLE on 11/30/2020; Assigned to Process Server. Service fee of $0.00. | |
| | Summons: Issued  on 11/30/2020;  to COUNCILWOMAN CLAYSON on 11/30/2020; Assigned to Process Server. Service fee of $0.00. | |
| | Summons: Issued  on 11/30/2020;  to GAROLD MIMS on 11/30/2020; Assigned to Process Server. Service fee of $0.00. | |
| | Summons: Issued  on 11/30/2020;  to CHIEF RAMSEY on 11/30/2020; Assigned to Process Server. Service fee of $0.00. | |
| | Summons: Issued  on 11/30/2020;  to SHERIFF EASTER on 11/30/2020; Assigned to Process Server. Service fee of $0.00. | |
| | Summons: Issued  on 11/30/2020;  to MARK SROUFE on 11/30/2020; Assigned to Process Server. Service fee of $0.00. | |
| | Summons: Issued  on 11/30/2020;  to TOM STOLZ on 11/30/2020; Assigned to Process Server. Service fee of $0.00. | |
| | Summons: Issued  on 11/30/2020;  to DARRELL HAYNES on 11/30/2020; Assigned to Process Server. Service fee of $0.00. | |
| | Summons: Issued  on 11/30/2020;  to DOUGLAS WILLIAMS on 11/30/2020; Assigned to Process Server. Service fee of $0.00. | |
| | Summons: Issued  on 11/30/2020;  to ADRIENNE BYRNE on 11/30/2020; Assigned to Process Server. Service fee of $0.00. | |
| | Summons: Issued  on 11/30/2020;  to CHRIS LABRUM on 11/30/2020; Assigned to Process Server. Service fee of $0.00. | |
| | Summons: Issued  on 11/30/2020;  to SCOTT WADLE on 11/30/2020; Assigned to Process Server. Service fee of $0.00. | |
| | Summon Councilman Brandon Johnson     PLE: Summons | Kevin M Smith, Div. 12 |
| | Summon Mayor Whipple     PLE: Summons | Kevin M Smith, Div. 12 |
| | Summon Commissioner Meitzer     PLE: Summons | Kevin M Smith, Div. 12 |

Date:   12/3/2020 **18th Judicial District Court** User: REMOTEKICS

Time:   02:48 PM ROA Report

Page 3 of 3 Case: 2020-CV-001825-OT

Current Judge: Kevin M Smith, Div. 12

BLU NIGHTCLUB, et al  vs.  MAYOR WHIPPLE, et al

Other

| Date | | Judge |
|---|---|---|
| 11/30/2020 | Summon Commissioner Cruse    PLE: Summons | Kevin M Smith, Div. 12 |
| | Summon Commissioner Dennis    PLE: Summons | Kevin M Smith, Div. 12 |
| | Summon Commissioner O'Donnel    PLE: Summons | Kevin M Smith, Div. 12 |
| | Councilwoman Tuttle    PLE: Summons | Kevin M Smith, Div. 12 |
| | Summon Councilwoman Clayson    PLE: Summons | Kevin M Smith, Div. 12 |
| | Summon Dr, Mims    PLE: Summons | Kevin M Smith, Div. 12 |
| | Summon Chief Ramsey    PLE: Summons | Kevin M Smith, Div. 12 |
| | Summon Sheriff Easter    PLE: Summons | Kevin M Smith, Div. 12 |
| | Summon Sroufe    PLE: Summons | Kevin M Smith, Div. 12 |
| | Summon Tom Stoltz    PLE: Summons | Kevin M Smith, Div. 12 |
| | Summons Darrell Haynes    PLE: Summons | Kevin M Smith, Div. 12 |
| | Summon Douglas Williams    PLE: Summons | Kevin M Smith, Div. 12 |
| | Summon Adrienne Byrne    PLE: Summons | Kevin M Smith, Div. 12 |
| | Summon Chris Labrum    PLE: Summons | Kevin M Smith, Div. 12 |
| | Summon Scott Wadle    PLE: Summons | Kevin M Smith, Div. 12 |
| 12/1/2020 | Summons: Issued  on 12/01/2020;  to GAROLD MINNS on 12/01/2020; Assigned to Process Server. Service fee of $0.00. | |
| | Summons: Issued  on 12/01/2020;  to COMMISSIONER MEITZNER on 12/01/2020; Assigned to Process Server. Service fee of $0.00. | |
| | Amended Summons Minns    PLE: Summons | Kevin M Smith, Div. 12 |
| | Amended Summon Commissioner Pete Meitzner    PLE: Summons | Kevin M Smith, Div. 12 |
| 12/2/2020 | Return Of Service Sroufe    RET: Return of Service | Kevin M Smith, Div. 12 |
| | Return Of Service Minns    RET:  Return of Service | Kevin M Smith, Div. 12 |
| | Return Of Service Meitzner    RET:  Return of Service | Kevin M Smith, Div. 12 |
| | Return Of Service Darryl Haynes    RET:  Return of Service | Kevin M Smith, Div. 12 |
| | Return Of Service Chief Ramsey    RET:  Return of Service | Kevin M Smith, Div. 12 |
| | Return Of Service Sheriff Easter    RET:  Return of Service | Kevin M Smith, Div. 12 |
| | Return Of Service Douglas Williams    RET:  Return of Service | Kevin M Smith, Div. 12 |
| | Return Of Service Adrienne Byrne    RET:  Return of Service | Kevin M Smith, Div. 12 |
| | Return Of Service Scott Wagle    RET:  Return of Service | Kevin M Smith, Div. 12 |
| | Return Of Service Chris Labrum    RET:  Return of Service | Kevin M Smith, Div. 12 |
| | Return Of Service Councilwoman Clayson    RET:  Return of Service | Kevin M Smith, Div. 12 |
| | Return Of Service Councilman Johnson    RET:  Return of Service | Kevin M Smith, Div. 12 |
| | Return Of Service Mayor Whipple    RET:  Return of Service | Kevin M Smith, Div. 12 |
| | Return Of Service Councilwoman Tuttle    RET:  Return of Service | Kevin M Smith, Div. 12 |
| | Return Of Service Commissioner Cruse    RET:  Return of Service | Kevin M Smith, Div. 12 |
| | Return Of Service David Dennis    RET:  Return of Service | Kevin M Smith, Div. 12 |
| | Return of Service Tom Stolz    RET:  Return of Service | Kevin M Smith, Div. 12 |

ELECTRONICALLY FILED
2020 Nov 25 PM 4:35
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-001825-OT

IN THE EIGHTEENTH JUDICIAL DISTRICT
DISTRICT COURT, SEDGWICK COUNTY, KANSAS
CIVIL DEPARTMENT

BLU NIGHTCLUB;                     )
DARREN GREIVING,                   )
                                   )
and                                )
                                   )
CLUB INDIGO OLD TOWN LLC )
dba INDUSTRY OLD TOWN;             )
BRADLEY J. STEVEN,                 )
                                   )
and                                )
                                   )
VORSHAY'S COCKTAIL                 )
LOUNGE; STEVEN PETERS              )
                                   )
and                                )
                                   )
THE COWBOY INN;                    )
JEANNIE AHRENS,                    )
                                   )
and                                )
                                   )
PARTY EXPRESS, LLC;                )
DALLAS BROZ,                       )
                                   )
and                                )
                                   )
WICHITA'S BALLROOM                 )
CHAOMIN HSU,                       )
                                   )
and                                )
                                   )
AUGUSTINO BREWING CO.;             )
AUGUSTINE IACOPELLI                )
                                   )
and                                )
                                   )
THE STOP;                          )

ALAN BRINKMAN, )
 )
and )
 )
THE RUSTY NAIL; )
KRISTI IVY, )
 )
and )
 )
A & J'S MUSIC ROOM BAR & )
GRILL; ART AGNER, )
 )
and )
 )
REVOLUTION LOUNGE; )
KYLE OKUMURA, )
 )
and )
 )
NICK SUTTER, )
 )
and )
 )
JOSIAH McCOY, )
 )
  PLAINTIFFS, )
 )
vs. ) Case No:
 )
MAYOR BRANDON WHIPPLE, )
in his official capacity as Mayor )
of the City of Wichita, )
 )
and )
 )
PETE MEITZER, MICHAEL )
O'DONNELL, DAVID DENNIS, )
and LACEY CRUSE in their )
official capacities as Sedgwick )
County Commissioners, )
 )

and                                          )
                                             )
**BRANDON JOHNSON, BECKY**  )
**TUTTLE, AND CINDY**                )
**CLAYSON in their official**          )
capacities as Members of the       )
City Council of the City of Wichita,)
                                             )
and                                          )
                                             )
**GAROLD MIMS in his official**     )
capacity as the Sedgwick County  )
Local Health Officer,                    )
                                             )
and                                          )
                                             )
**CHIEF GORDON RAMSEY in**     )
his official capacity as the Chief of )
Police of the City of Wichita,       )
                                             )
and                                          )
                                             )
**JEFF EASTER in his official**     )
capacity as the Sheriff of Sedgwick)
County, Kansas,                          )
                                             )
and                                          )
                                             )
**MARK SROUFE in his official**    )
capacity as the Sedgwick County  )
Park Superintendent,                    )
                                             )
and                                          )
                                             )
**TOM STOLZ in his official**        )
capacity as the Sedgwick County  )
Manager,                                    )
                                             )
and                                          )

3

**DARRELL HAYNES in his**
**official capacity as Sedgwick**
**County Courthouse Police Chief**

**and**

**DOUGLAS J. WILLIAMS in his**
**official capacity as Sedgwick**
**County Fire Chief,**

**and**

**ADRIENNE BYRNE in her**
**official capacity as Sedgwick**
**County Animal Control Director,**

**and**

**CHRIS W. LABRUM in his**
**official capacity as the Director of**
**Sedgwick County Area Building**
**and Construction Department,**

**and**

**SCOTT WADLE in his official**
**capacity as the Sedgwick County**
**Zoning Administrator,**

**and**

**JOHN DOE 1-20; and**
**DOE ENTITIES 1-20.**

   **DEFENDANTS.**

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

4

## VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## PRELIMINARY STATEMENT

"The imperative necessity for safeguarding these rights to procedural due process under the gravest of emergencies has existed throughout our constitutional history, for it is then, under the pressing exigencies of crisis, that there is the greatest temptation to dispense with fundamental constitutional guarantees which, it is feared, will inhibit governmental action. The Constitution of the United States is a law for rulers and people . . . and covers with the shield of its protection all classes of men, at all times, and under all circumstances."

"(I)f society is disturbed by civil commotion—if the passions of men are aroused and the restraints of law weakened, if not disregarded—these safeguards need, and should receive, the watchful care of those intrusted with the guardianship of the Constitution and laws. In no other way can we transmit to posterity unimpaired the blessings of liberty, consecrated by the sacrifices of the Revolution.'" Kennedy v. Mendoza-Martinez, 372 U.S. 144, 165, 83 S. Ct. 554, 565–66, 9 L. Ed. 2d 644 (1963).

"We have a duty to defend the Constitution, and even a public health emergency does not absolve us of that responsibility . . . But a public health emergency does not give Governors and other public officials carte blanche to disregard the Constitution for as long as the medical problem persists. As more medical and scientific evidence becomes available, and as States have time to craft policies in light of that evidence, courts should expect policies that more carefully account for constitutional rights." Calvary Chapel Dayton Valley v. Sisolak, 140 S. Ct. 2603, 2604-2605 (2020)(Alito, J, dissenting).

5

This is a complaint for declaratory and injunctive relief from a county-wide "emergency public health order" issued November 24, 2020, and to take effect on November 27, 2020, by an unelected, local health officer, Garold Mims, M.D. (Exhibit 1).

This complaint also seeks declaratory and injunctive relief from Resolution 154-2020, adopted by the Sedgwick County Commissioners on November 10, 2018, and published on November 18, 2020, which makes noncompliance with any order of the Sedgwick County Local Health Officer a Class I misdemeanor, subject to a $500.00 fine. (Exhibit 2).

This complaint further seeks declaratory and injunctive relief from Resolution No. 20-369, adopted by the City of Wichita City Council on or about November 19, 2020, and published on November 22, 2020, which consented to Sedgwick County Resolution 154-2020 applying and being effective and criminally enforceable within the corporate city limits of the City of Wichita. (Exhibit 3).

Dr. Mims did not have statutory authority to issue the Emergency Order dated November 24, 2020, (hereinafter "the Mims Order"). By doing so, he has acted *ultra vires*. But even if he did have authority to issue this order, the Mims Order is in violation of the First and Fourteenth Amendments to the United States Constitution, Sections 1 and 18 of the Kansas Bill of Rights, and the state separation of powers and non-delegation doctrines.

The Sedgwick County Commissioners did not have statutory authority to criminalize any orders issued by Dr. Mims, pursuant to K.S.A. 65-202, which action effectively changed the nature of K.S.A. 65-202 (from a non-penal to a penal statute) in violation of the County's

home rule authority. K.S.A. 19-101(a)(39). As such, Sedgwick County Resolution 154-2020 is null and void. K.S.A. 19-101(b).

Alternatively, if the Sedgwick County Commission did have authority to issue Resolution 154-2020 pursuant to K.S.A. 65-202, then K.S.A. 65-202 and the Resolution violates the First and Fourteenth Amendments to the United States Constitution, and Sections 1 and 18 of the Kansas Bill of Rights, and the state separation of powers and non-delegation doctrines.

Finally, the City Council's Resolution 20-369, which purports to adopt Sedgwick County Resolution 154-2020, was in violation of the City's Home Rule and police powers. Alternatively, even if the City Council had authority to issue Resolution 20-369, the Resolution seeks to enforce an unconstitutional resolution in violation of the First and Fourteenth Amendments to the United States Constitution, and Sections 1 and 18 of the Kansas Bill of Rights, and the state separation of powers and non-delegation doctrines.

The Plaintiffs seek to have the Mims Order, Sedgwick County Resolution 154-2020, and City Council Resolution 20-369 declared null and void, and in violation of the United States and Kansas Constitutions, and request this Court to issue an immediate injunction enjoining the Defendants from criminally enforcing these unconstitutional acts within Sedgwick County, and within the corporate limits of the City of Wichita.

## PARTIES

1.    Plaintiff Blu Nightclub is located at 8715 W. Maple St., Wichita, KS 67209.

2.    Plaintiff Darren Greiving is a resident of the City of Wichita, Sedgwick County,

      Kansas. He is owner and operator of Blu Nightclub. Mr. Greiving files this suit in his

      capacity as the owner of Blu Nightclub, and in his individual capacity.

3.    Plaintiff Club Indigo Old Town LLC dba Industry Old Town is located at 126 N.

      Mosley St., Wichita, KS 67202.

4.    Plaintiff Bradley J. Steven is a resident of the City of Wichita, and the owner and

      manager of Club Indigo Old Town LLC dba Industry Old Town. Mr. Steven files this

      suit in his capacity as the owner of Blu Nightclub, and in his individual capacity.

5.    Plaintiff Vorshay's Cocktail Lounge is located at 417 E. Douglas, Wichita, KS 67202.

6.    Plaintiff Steven Peters is a resident of the City of Wichita, Sedgwick County, Kansas,

      and is the owner of Vorshay's Cocktail Lounge. Mr. Peters files this suit in his

      capacity as the owner of Vorshay's Cocktail Lounge, and in his individual capacity.

7.    Plaintiff The Cowboy Inn is located at 642 N. St. Paul, Wichita, Kansas.

8.    Plaintiff Jeannie Ahrens is a resident of the City of Wichita, Sedgwick County,

      Kansas, and is the owner of The Cowboy Inn. Ms. Ahrens files this suit in her

      capacity as the owner of Little Buster's Sports Bar, and in his individual capacity.

9.    Plaintiff Party Express, LLC is located at 13728 W. Kellogg Drive, Wichita, KS.

10.    Plaintiff Dallas Broz is a resident of the City of Wichita, Sedgwick County, Kansas, and is the owner of Party Express, LLC.  Mr. Broz files this suit in his capacity as the owner of Party Express Bus, and in his individual capacity.

11.    Plaintiff Wichita's Ballroom is located at 4600 W. Kellogg Drive, Wichita, KS.

12.    Plaintiff Chaomin Hsu is a resident of the City of Wichita, Sedgwick County, Kansas, and is the owner of Wichita's Ballroom.  Mr. Hsu files this suit in his capacity as the owner of Wichita's Ballroom, and in his individual capacity.

13.    Plaintiff Augustino Brewing Company is located at 756 N. Tyler Road, Sedgwick County, Kansas..

14.    Plaintiff Augustin Joseph Iacopelli is a resident of the City of Wichita, Sedgwick County, Kansas, and is the owner of Augustino Brewing Company.  Mr. Iacopelli files this suit in his capacity as the owner of Augustino Brewing Company, and in his individual capacity.

15.    Plaintiff The Stop is located at 1450 S. Washington, Wichita, Kansas.

16.    Plaintiff Alan Brinkman is a resident of the City of Wichita, Sedgwick County, Kansas, and is the owner of The Stop.  Mr. Brinkman files this suit in his capacity as the owner of The Stop, and in his individual capacity.

17.    Plaintiff The Rusty Nail is located at 1155 S. Washington, Wichita, Kansas.

18.    Plaintiff Kristi Ivy is a resident of the City of Wichita, Sedgwick County, Kansas, and is the owner of The Rusty Nail.  Ms. Ivy files this suit in her capacity as the owner of The Rusty Nail, and in her individual capacity.

19.   Plaintiff A & J's Music Room Bar and Grill is located at 1602 S. Meridian Avenue, Wichita, KS.

20.   Plaintiff Art Agner is a residence of the City of Wichita, Sedgwick County, Kansas, and the owner and manager of A & J's Music Room Bar and Grill.  Mr. Agner files this suit in his capacity as the owner of A & J's Music Room Bar and Grill, and in his individual capacity.

21.   Plaintiff Revolution Lounge is located at 233 N. Mosley St., Wichita, Kansas.

22.   Plaintiff Kyle Okumura is a resident of the City of Wichita, Sedgwick County, Kansas, and the owner and manager of Revolution Lounge.  Mr. Okumura files this suit as the owner and manager of Revolution Lounge, and in his individual capacity.

23.   Plaintiff Nick Sutter is a resident of the City of Wichita, Sedgwick County, Kansas. He brings this suit in his individual capacity.

24.   Plaintiff Josiah McCoy is a resident of the City of Wichita, Sedgwick County, Kansas. He brings this suit in his individual capacity.

25.   Defendant Brandon Whipple is the current Mayor of the City of Wichita.  Defendant Whipple signed Resolution 20-369 on or about November 19, 2020, in his official capacity as Mayor of the City of Wichita, purportedly under the City's home rule and police powers.

26.   Defendant Whipple was acting under color of state law which caused the deprivation of Plaintiffs' rights, protected by the United States and Kansas Constitutions. Defendant Whipple is sued in his official capacity for non-monetary prospective relief.

10

27.   Defendants Pete Meitzer, Michael O'Donnell, David Dennis, and Lacey Cruse are the current Commissioners for the County of Sedgwick, State of Kansas. Defendants adopted Sedgwick County Resolution 154-2020, on or about November 10, 2020, in their official capacities as Sedgwick County Commissioners, purportedly under the County's home rule authority.

28.   Defendants Meitzer, O'Donnell, Dennis, and Cruse were acting under color of state law which caused the deprivation of Plaintiffs' rights, protected by the United States and Kansas Constitutions. Defendants Meitzer, O'Donnell, Dennis, and Cruse are sued in their official capacity for non-monetary prospective relief.

29.   Defendants Brandon Johnson, Becky Tuttle, and Cindy Clayson are the current members of the City Council for the City of Wichita. Defendants adopted Resolution 20-369, on or about November 19, 2020, in their official capacities as members of the City Council, purportedly under the City's home rule and police powers.

30.   Defendants Johnson, Tuttle, and Clayson were acting under color of state law which caused the deprivation of Plaintiffs' rights protected by the United States and Kansas Constitutions. Defendants Johnson, Tuttle, and Clayson are sued in their official capacity for non-monetary prospective relief.

31.   Defendant Garold Mims is the current Sedgwick County Local Health Officer. Dr. Mims issued an Emergency Order dated November 24, 2020, purportedly under the authority of K.S.A. 65-119, K.S.A. 65-202, and "other applicable laws or regulations." (Mims Order, pg. 1). The order also purports to be a "public health directive"

11

pursuant to Section 9 of the 2020 Special Session House Bill No. 2016. (Mims Order, pgs. 7-8).

32.    Defendant Mims was acting under color of state law which caused the deprivation of Plaintiffs' rights protected by the United States and Kansas Constitutions. Defendant Mims is sued in his official capacity for non-monetary prospective relief.

33.    Defendant Chief Gordon Ramsey is the Chief of Police of the City of Wichita. Under City of Wichita Resolution 20-369(4), law enforcement officers and code enforcement officers employed by the City of Wichita are directed to provide assistance to Sedgwick County Code Enforcement officers to criminally enforce the provisions of Sedgwick County Resolution 154-2020. Defendant Ramsey is sued in his official capacity for non-monetary prospective relief.

34.    Defendant Sheriff Jeff Easter is the Sheriff of Sedgwick County, Kansas. Under Sedgwick County Resolution 154-2020, Section 5, any individual identified as a "code enforcement officer," as the term is defined within Section 1-2 of the Sedgwick County Code are authorized to issue a uniform complaint and notice to appear for any individuals, businesses, or organizations accused of violating said Resolution, and "county law enforcement officers" are within the definition of "code enforcement officers" in Section 1-2 of the Sedgwick County Code. Defendant Easter is sued in his official capacity for non-monetary prospective relief.

35.    Defendant Mark Sroufe is the Sedgwick County Park Superintendent. Under Sedgwick County Resolution 154-2020, Section 5, any individual identified as a "code

enforcement officer," as the term is defined within Section 1-2 of the Sedgwick County Code are authorized to issue a uniform complaint and notice to appear for any individuals, businesses, or organizations accused of violating said Resolution, and "park superintendent" is within the definition of "code enforcement officers" in Section 1-2 of the Sedgwick County Code. Defendant Sroufe is sued in his official capacity for non-monetary prospective relief.

36.    Defendant Tom Stolz is the Sedgwick County Manager.  Under Sedgwick County Resolution 154-2020, Section 5, any individual identified as a "code enforcement officer," as the term is defined within Section 1-2 of the Sedgwick County Code are authorized to issue a uniform complaint and notice to appear for any individuals, businesses, or organizations accused of violating said Resolution, and those persons designated by the "county manager" are within the definition of "code enforcement officers" in Section 1-2 of the Sedgwick County Code. Defendant Stolz is sued in his official capacity for non-monetary prospective relief.

37.    Defendant Darrell Haynes is the Sedgwick County Courthouse Police Chief.  Under Sedgwick County Resolution 154-2020, Section 5, any individual identified as a "code enforcement officer," as the term is defined within Section 1-2 of the Sedgwick County Code are authorized to issue a uniform complaint and notice to appear for any individuals, businesses, or organizations accused of violating said Resolution, and any persons designated under section 20-2 of the Code is within the definition of "code enforcement officers" in Section 1-2 of the Sedgwick County Code.  The Sedgwick

13

County Courthouse Chief of Police and his designees are specifically named as a "code enforcement officer" in Section 20-2(h). Defendant Haynes is sued in his official capacity for non-monetary prospective relief.

38. Defendant Douglas J. Williams is the Sedgwick County Fire Chief. Under Sedgwick County Resolution 154-2020, Section 5, any individual identified as a "code enforcement officer," as the term is defined within Section 1-2 of the Sedgwick County Code are authorized to issue a uniform complaint and notice to appear for any individuals, businesses, or organizations accused of violating said Resolution, and the "code official" for the Fire Code for Sedgwick County is within the definition of "code enforcement officers" in Section 1-2 of the Sedgwick County Code. Defendant Williams is sued in his official capacity for non-monetary prospective relief.

39. Defendant Adrienne Byrne is the Sedgwick County Animal Control Officer. Under Sedgwick County Resolution 154-2020, Section 5, any individual identified as a "code enforcement officer," as the term is defined within Section 1-2 of the Sedgwick County Code are authorized to issue a uniform complaint and notice to appear for any individuals, businesses, or organizations accused of violating said Resolution, and the director and any animal control officers are within the definition of "code enforcement officers" in Section 1-2 of the Sedgwick County Code. Defendant Byrne is sued in her official capacity for non-monetary prospective relief.

40. Defendant Chris Labrum is the Director of Sedgwick County Area Building and Construction Department. Under Sedgwick County Resolution 154-2020, Section 5,

any individual identified as a "code enforcement officer," as the term is defined within Section 1-2 of the Sedgwick County Code are authorized to issue a uniform complaint and notice to appear for any individuals, businesses, or organizations accused of violating said Resolution, and the director of the metropolitan area building and construction department is within the definition of "code enforcement officers" in Section 1-2 of the Sedgwick County Code. Defendant Labrum is sued in his official capacity for non-monetary prospective relief.

41.    Defendant Scott Wadle is the Sedgwick County Zoning Administrator/Director. Under Sedgwick County Resolution 154-2020, Section 5, any individual identified as a "code enforcement officer," as the term is defined within Section 1-2 of the Sedgwick County Code are authorized to issue a uniform complaint and notice to appear for any individuals, businesses, or organizations accused of violating said Resolution, and the director of the metropolitan area building and construction department and his designees are within the definition of "code enforcement officers" in Section 1-2 of the Sedgwick County Code. Defendant Labrum is sued in his official capacity for non-monetary prospective relief.

42.    Plaintiffs reserve the right to amend the complaint to assert claims against Doe persons and entities. Plaintiffs anticipate conducting discovery in this matter which could reveal a basis for adding additional defendants based on their activities in connection with the issues in this case.

43.     The Attorney General will be served with a copy of the proceedings pursuant to KSA
        75-764.

## JURISDICTION AND VENUE

44.     Plaintiffs seek to vindicate their rights under the First and Fourteenth Amendments to
        the United States Constitution, pursuant to 42 U.S.C. § 1983, Sections 1 and 18 of the
        Kansas Bill of Rights, K.S.A. 60-1701 et. seq., and under 42 U.S.C. § 1988 an award
        of attorney's fees.

45.     Plaintiffs seek temporary and/or preliminary and permanent injunctive relief from the
        criminal enforcement of Mims Order, Sedgwick County Resolution 154-2020, and
        City of Wichita Resolution 20-369 pursuant to K.S.A. 60-901 et. seq.

46.     This Court has jurisdiction over the federal constitutional claims pursuant to 42 U.S.C.
        § 1983. Bloom v. Arnold, 45 Kan. App. 2d 225, 232, 248 P.3d 752, 757 (2011). The
        Court has general jurisdiction over claims arising under Kansas law, to issue
        declaratory relief under K.S.A. 60-1701, and to issue injunctive relief under K.S.A.
        60-901 et. seq.

47.     Venue is proper because the acts occurred in Sedgwick County, Kansas.

## STATEMENT OF FACTS

### A.    MASK OR FACE COVERING MANDATE.

48.     The Mims Order states that to "reduce the spread of COVID-19, measures that are
        recommended and considered effective the CDC "include covering one's mouth and n
        ose with a cloth face cover when in public settings." (Mims Order, pg. 2).

16

49.   Accordingly, the Mims Order mandates that every person in Sedgwick County, with
      some exemptions, must cover their mouths and noses with a mask or "other face
      covering" when they are in any public space, in line waiting to enter an indoor public
      space, obtaining health care services, and riding on public transportation or while in a
      taxi, private car service, or ride-sharing vehicle. (Mims Order, Section II(1)(a)-(d).

50.   "Mask or other face covering" is defined as follows: "means a covering of the nose
      and mouth that is secured to the head with ties, straps, or loops over the ears or secured
      to the head by other means or devices or simply wrapped around the lower face. A
      mask or other face covering can be made of a variety of synthetic and natural fabrics,
      including cotton, silk , or linen. Ideally, a mask or other face covering should have
      two or more layers. A mask or other face covering may be factory-made, sewn by
      hand, or can be improvised from the household items such as scarfs, bandanas, t-shirts,
      sweatshirts, or towels. The definition of "mast or other face covering" includes a face
      shield. The definition of "mask or other face covering" does not include a covering
      that is equipped with a one-way valve or vent through which air can be exhaled."
      (Mims Order, Section I(2).

51.   On May 26, 2020, the Food and Drug Administration ("FDA") issued non-binding
      recommendations indicating that face masks, face shields, and N95 respirators are
      medical devices under circumstances contemplated by the above-cited portions of the
      Mims Order. "Face masks, face shields, and N95 respirators are devices when they
      meet the definition of a device set forth in section 201(h) of the FD&C Act. Under

section 201(h) of the FD&C Act, these products are devices when they are intended for use in the diagnosis of disease or other conditions or in the cure, mitigation, treatment, or prevention of disease . . . Face masks, face shields, and respirators are devices when they are intended for a medical purpose, such as prevention of infectious disease transmission (including uses related to COVID-19)."

https://www.fda.gov/media/136449/download

52. Thus, the mask mandate of the Mims Order mandates the medical treatment of every citizen of Sedgwick County, with some exemptions, even though the vast majority of individuals required to wear masks are healthy or are not in a group with a high risk to contract COVID-19. The mask mandate presumes that all citizens are diseased unless proven healthy, and is forcing every citizen of Sedgwick County, including the Plaintiffs Sutter and McCoy, to submit to government ordered medical treatment without the citizen's consent.

53. At times courts have struck down public health orders when they were found to be arbitrary and unreasonable in relation to their goal of protecting the public health. Thus, in Jew Ho v. Williamson, 103 F. 10 (C.C.D.Cal.1900), the court found that sealing off an entire section of San Francisco to prevent the spread of the bubonic plague was "unreasonable, unjust, and oppressive." Id. at 26. This was because the overbroad order was "not in harmony with the declared purpose" of preventing the spread of the disease. Id. at 23. Also, in In re Smith, 101 Sickels 68, 76, 146 N.Y. 68, 40 N.E. 497 (1895), the New York Court of Appeals rejected the blanket quarantine of

individuals who refused vaccination, when there was no reason to believe they had been infected or even exposed to that disease. Similarly, the mask mandate of the Mims Order is overbroad because it is not in harmony with its declared purpose, i.e. to stop the spread of COVID-19, and because there is no evidentiary basis to believe that every citizen in Sedgwick County, including the Plaintiff Sutter and McCoy, are infected or have even been exposed to COVID-19.

54.   This is illustrated by the fact that wearing of masks as a means of limiting disease spread is not based on science. This includes the wearing of proper personal protective equipment (PPE), such as the N-95 masks. The Lancet Study, often cited in support of mask wearing, actually concluded that the use of PPE to contain transmission was of "low certainty," saying anecdotally that what protective value it had was higher for N95 respirators, but that this indicated protection for the wearer, not other people in the community.

55.   A study posted on the CDC website in May, 2020, concluded as follows: "Disposable medical masks (also known as surgical masks) are loose-fitting devices that were designed to be worn by medical personnel to protect accidental contamination of patient wounds, and to protect the wearer against splashes or sprays of bodily fluids. There is limited evidence for their effectiveness in preventing influenza virus transmission either when worn by the infected person for source control or when worn by uninfected persons to reduce exposure. Our systematic review found no significant effect of face masks on transmission of laboratory-confirmed influenza . . . We did not

19

find evidence that surgical-type face masks are effective in reducing

laboratory-confirmed influenza transmission, either when worn by infected persons

(source control) or by persons in the general community to reduce their susceptibility."

**Https://wwwnc.cdc.gov/eid/article/26/5/19-0994**

56.  On June 4, 2020, the CDC published guidance indicating that masks do not deter the

spread of Covid-19 after as little as fifteen minutes of exposure to someone with

symptoms. CDC, Public Health Guidance for Community-Related Exposure, updated

July 31, 2020.

https://www.cdc.gov/coronavirus/2019-ncov/php/public-health-recommendations.html

57.  Although the World Health Organization (WHO) recommends the wearing of masks

for health professionals, the WHO has acknowledged that there is no evidence that

mask wearing prevents the spread of COVID-19:  "At present, there is no direct

evidence (from studies on COVID-19 and in healthy people in the community) on the

effectiveness of universal masking of healthy people in the community to prevent

infection with respiratory viruses, including COVID-19." World Health Organization

(WHO), Advice on the use of masks in the context of COVID-19, Interim Guidance

(June 5, 2020) at 6.

https://www.who.int/publications/i/item/advice-on-the-use-of-masks-in-the-communit

y-during-home-care-and-in-healthcare-settings-in-the-context-of-the-novel-coronaviru

s-(2019-ncov)-outbreak.

58.  In July of 2020, a review by the University of Oxford, Centre for Evidence-Based Medicine found that there is no evidence that cloth masks are effective against virus infection or transmission.  Jefferson, Tom & Heneghan, Carl, Masking lack of evidence with politics, Centre for Evidence-Based Medicine, July 23, 2020. https://www.cebm.net/covid-19/masking-lack-of-evidence-with-politics/

59.  In addition, a July 2020 study by Japanese researchers found that cloth masks "offer zero protection against coronavirus."  Naoya Kon, Cloth face masks offer zero shield against virus, a study shows, The Asahi Shimbun, study by Kazunari Onishi. **http://www.asahi.com/ajw/articles/13523664.**  ("This experiment reconfirmed that wearing cloth and gauze masks can't prevent virus infection.")

60.  A Twitter post from Deborah Cohen, UK correspondent for BBC Newsnight and 2019 British Journalism Award winner, indicates that the WHO's recommendation for mask wearing was made, in part, because of political considerations:

Deborah Cohen @deb_cohen  "We had been told by various sources WHO committee reviewing the evidence had not backed masks but they recommended them due to political lobbying. This point was put to WHO who did not deny. We said some people think we should not wait for RCTs before putting policies in place." 4:25 AM · Jul 12, 2020.

61.  Similarly, the above study from the Centre for Evidence-Based Medicine concludes as follows: "The small number of trials and lateness in the pandemic cycle is unlikely to give us reasonably clear answers and guide decision-makers. *This abandonment of the*

21

*scientific modus operandi and lack of foresight has left the field wide open for the play of opinions, radical views and political influence.*" (Emphasis added).

62. The above underscores that, for many individuals, including the Plaintiffs Sutter and McCoy, a face mask has become a symbol of an attempt by the government to gain control of its citizenry. Forcing them to wear face masks is forcing them to convey a message with which they disagree. Because a mask has become a political symbol during this current and highly politicized pandemic, the wearing of a mask is a form of symbolic speech. Consequently, via the mask mandate of the Mims Order, Defendants are compelling Plaintiffs Sutter and McCoy to engage in a form of expression and to convey a message with which they disagree at the threat of criminal prosecution.

63. The above underscores how wearing face masks has become a form of government mandated speech, with which the Plaintiffs Sutter and McCoy have a constitutional right to protest. This is especially so given the legitimate medical and scientific evidence establishing that wearing face masks made of cloth or "improvised" from household items - - which items specifically fall under the definition of "mask or face covering" in the Mims Order - - do nothing to stop the spread of COVID-19. And, in fact, as demonstrated by the CDC Study from May of 2020, non-N95 masks may actually increase the risk for transmission, especially through improper use. The Mims Order, while citing the CDC as the underlying rationale for the mask mandate, ignores what the CDC has actually reported about the lack of effectiveness in wearing cloth masks to reduce the spread of COVID-19.

22

64.  Further, the wearing of masks can have negative and dangerous consequences for the
     wearer.  These consequences include adversely affecting respiratory physiology and
     function, lowering oxygen levels in the blood, raising carbon dioxide levels in the
     blood, (which makes COVID-19 more dangerous), giving a false sense of security,
     allowing the collection and colonization of viruses, bacteria, and mold, and making
     exhaled air go into the eyes.
     https://www.meehanmd.com/blog/2020-10-10-an-evidence-based-scientific-analysis-o
     f-why-masks-are-ineffective-unnecessary-and-harmful/.

65.  It should be up to each individual, including the Plaintiffs Sutter and McCoy, to decide
     whether he or she should wear a mask based on his or her own personal situation and
     concerns, and not face the threat of criminal prosecution for making the "wrong"
     decision as mandated by the Mims Order.  The United States and Kansas Constitutions
     guarantee freedom from such government interference with a private citizen's personal
     life.

     **B.     PROHIBITION ON "MASS GATHERINGS."**

66.  The Mims Order also mandates that "mass gatherings" within public spaces, whether
     indoors or outdoors, shall be limited to 25 total individuals.  While the "mass
     gathering" mandate does not apply to restaurants, bars, night clubs, other businesses
     licensed to sell alcohol for on-premises consumption, fitness centers, and health clubs
     these business types shall be limited to 100 people or 50 percent of the capacity
     permitted under the fire code.  The "mass gathering" mandate exempts retail stores due

to their "transitory nature." The 50 percent fire code capacity applies to retail stores. Also exempt from the "mass gathering" prohibition are airports, bus stations, other public transportation facilities, weddings, and funerals. Political protests or peaceable assemblies to seek redress from the government are not among the exceptions listed to the "mass gatherings" prohibition. (The Mims Order, Section III(4)(5)).

67.    Plaintiffs are individuals whose freedom to assemble, including their freedom of expressive assembly, is being violated by the Mims Order. The Plaintiffs have planned a political protest of the Mims Order beginning on or about December 5, 2020.

68.    The limit of "mass gatherings" to 25 people is not narrowly tailored to fulfill the purpose of the Mims Order, i.e. to reduce the spread of COVID-19. The Mims Order permits commercial gatherings that exceed the 25 total person limit so long as the commercial businesses do not exceed 50 percent capacity under the fire code. This would allow hundreds of people to congregate in retail stores. Further, the Mims Order exempts wedding and funeral ceremonies (but not receptions or gatherings outside those events), airports, bus stations, and other public transportation facilities from the social distancing and mass gathering prohibition.

69.    These exemptions to the "mass gathering" prohibition are far less restrictive than that imposed upon specific activities traditionally protected by the First Amendment, including political, social, cultural, educational and other expressive gatherings, and including the Plaintiffs' planned protest of the Mims Order scheduled for December 5,

24

2020.  Indeed, fairs, festivals, carnivals, parades, and "other similar events" are specifically prohibited.  (The Mims Order, Section IV(3).  Presumably, this would include political parades, protests, and rallies, including the Plaintiffs' planned protest of the Mims Order beginning December 5, 2020.

70.     Indeed, the Plaintiffs public political rally, in which they are going to protest the Mims Order among other things, will be subject to criminal prosecution under the Mims Order.  However, at the exact same time, the Mims Order allows hundreds if not thousands of people to attend a high school or collegiate sporting event, and allows scores of people to shop at Wal-Mart or Costco, or be present in the airport, on a bus or other public transportation.  While stopping the spread of COVID-19 may be a significant government interest, the Mims Order is not narrowly tailored to serve that interest.  The "mass gathering" prohibition of the Mims Order violates the United States and Kansas Constitutions.

### C.     THE BUSINESS CURFEW.

71.     The Mims Order contains provisions limiting certain activities, and imposing curfews on certain businesses.  These include a mandate that nail salons, barber shops, tattoo parlors, dentists and "other personal services businesses" must only serve customers for pre-scheduled appointments or online check-in.  (The Mims Order, Section IV(1).

72.     In addition, the Mims Order requires "all bars, night clubs, other businesses licensed to sell alcohol for on-premises consumption," abide by a curfew from 11 p.m until 5 a.m.

The Order also requires restaurants to abide by the same curfew, and prohibits in-person dining between 11 p.m. and 5 a.m.  (Section IV(4) and (5).

73.   The Plaintiffs have been and continue to be injured by the restaurant and bar curfew regime.  Among other things, the Plaintiffs  must cease certain commercial activity at 11:00 p.m.  This restaurant and bar curfew regime contravenes state law in many ways, but as an example, the Plaintiffs would not otherwise be prohibited from serving alcoholic beverages from 6:00 a.m. to 2:00 a.m., (*See* KSA § 41-2614).  There is no constitutionally sufficient rationale for imposing the restaurant and bar curfew regime.

74.   Further, according to the KDHE website, there have been a total of 17 clusters of COVID-19 cases across the entire state, from the beginning of the pandemic, that can be connected with bars and restaurants.  This has resulted in 281 cases, 4 hospitalizations, and 0 deaths.  **https://www.coronavirus.kdheks.gov/160/COVID-19-in-Kansas** (last accessed 11/25/20).  Also, an article on the 3 KSN website, entitled "Wichita restaurant owners say they're COVID scapegoats, urge decision makers to study data," reports the following: "Adam Mills, the executive director of the Kansas Restaurant and Hospitality Association, said his group recently conducted a survey of members, and the results showed that restaurants are not major spreaders of the virus." https://www.ksn.com/news/health/coronavirus/coronavirus-in-kansas/wichita-restaurant-owners-say-theyre-covid-scapegoats-urge-decision-makers-to-study-data/?utm_medium=referral&utm_source=t.co&utm_campaign=socialflow.

75. On the other hand, the KDHE website records that there have been 240 clusters of COVID-19 cases connected to "private businesses," which presumably includes retail stores. These clusters have resulted in 1,801 cases, 96 hospitalizations, and 16 deaths. Based upon these statistics, COVID-19 clusters arising from private businesses is 105 times greater than that arising from bars and restaurants. However, under the Mims Order, retail businesses are completely exempt from the "mass gathering" prohibition and from the 11 p.m. curfew. (While bars and restaurants are exempt from the "mass gathering" prohibition, the Mims Order limits patrons to 100 individuals or 50 percent of fire capacity, whichever is less).

76. Further, according to the KDHE website, there have been a total of 43 clusters connected to "sports," resulting in 373 cases, 1 hospitalization, and 1 death. However, the Mims Order exempts sports from the mask mandate, and the mass gathering prohibition.

77. Similarly, there have been 111 COVID-19 clusters arising from "private events," resulting in 744 cases, 29 hospitalizations, and 7 deaths. Religious gatherings account for 39 clusters, 419 cases, 67 hospitalizations, and 19 deaths. However, the Mims Order exempts religious facilities, weddings, and funerals from the social distancing and "mass gathering" prohibition.

78. If the goal of the Mims Order is to slow the spread of COVID-19, then there is no rational or reasonable basis for the disparate treatment of bars and restaurants on the one hand, and retail stores, religious facilities, weddings, and funerals on the other.

27

79.   The restaurant and bar curfew regime has caused significant economic injury to the
      Plaintiffs and will continue to cause significant economic injury.  For instance,
      Plaintiff Steven Peters states that sales at his establishment, Vorshay's Cocktail
      Lounge, are down approximately 92%.  (Attached Affidavit of Steven Peters, ¶ 5).
      Plaintiff Hsu has lost 80% of his income from Wichita's Ballroom due to the series of
      Dr. Mims' Order, including the order to take effect on November 27.  (Affidavit of
      Chasmin Hsu, ¶ 5).  Plaintiff Brinkman's revenue has decreased by 70%.  (Affidavit of
      Alan Brinkman, ¶ 5).  Plaintiff Dallas Broz, owner of Party Express, LLC, avers that
      his establishment has been "harmed substantially due to the shutdown orders all while
      having no cases of COVID or evidence/data to support the closures."  (Affdiavit of
      Dallas Broz, ¶ 5).  Plaintiff Kristi Ivy avers that her establishment, The Rusty Nail, has
      experienced a loss of over $23,000, since the November 13, 2020, Emergency Order of
      Dr. Mims.  (Affidavit of Krisi Ivy).  Plaintiff Bradley Steven, owner of Club Indigo
      Old Town LLC dba Industry Old Town, avers that "sales are at an all time low."
      (Affidavit of Bradley Steven, ¶ 5).  Plaintiff Jeannie Ahrens, owner of The Cowboy
      Inn, states the curfew and other restrictions have caused "unbelievable financial
      burden."  (Affidavit of Jeannie Ahrens, ¶ 5).  Plaintiff Augustine Iacopelli, owner of
      Augustino Brewing Company, states that his business has dropped by 15%.  (Affidavit
      of Augustine Iacopelli, ¶5).  The significant economic hardship caused by the Mims
      Order has made complete closure of several of the Plaintiffs' bars/restaurants a likely
      reality.  (Affidavit of Darren Greiving, ¶ 5).

80.   The same day the Mims Order is enjoined and/or declared unconstitutional, The Plaintiffs will either fully open for business (while continuing tol implement COVID-19 mitigation procedures and protocols), or immediately request a hearing before the appropriate tribunal.  See attached Affidavits of Plaintiff Bar Owners.

81.   The Mims Order is an ongoing violation of federal law.

82.   But for the Mims Order, The Plaintiffs would not have suffered the extent of these harms or injuries in the past, and would not suffer the extent of these harms or injuries in the future.

83.   Because the Mims Order does not contain a pre- or post-deprivation process, The Plaintiffs have no other option than to file this lawsuit.

84.   The Plaintiffs have been and continue to be injured by the Mims Order because, among other things, they do not have any opportunity other than this suit to challenge the Mims Order.

85.   The Plaintiffs have been and continue to be injured by the Mims Order's enabling statutes.  The enabling statutes have caused significant economic injury to The Plaintiffs and will continue to cause significant economic injury.

86.   But for Mims Order's enabling statutes, The Plaintiffs would not have suffered the extent of these harms or injuries in the past, and would not suffer the extent of these harms or injuries in the future.

87.   The Plaintiffs have been and continue to be injured by the Mims Order's enabling

statutes because, among other things, they are unconstitutionally vague, and they do

not provide for an opportunity to challenge the Mims Order.

88.   The Mims Order's enabling statutes are an ongoing violation of federal law and an

ongoing violation of the Kansas Constitution.

89.   But for the Mims Order's enabling statutes and threatened enforcement, The Plaintiffs

would not have suffered the extent of these harms or injuries in the past, and would

not suffer the extent of these harms or injuries in the future.

## DECLARATORY AND INJUNCTIVE RELIEF

90.   Plaintiffs reallege and incorporate by reference all previous paragraphs.

91.   An actual controversy has arisen and now exists between Plaintiffs and Defendants

concerning Plaintiffs' rights under the United States and Kansas Constitutions.  A

judicial declaration is necessary and appropriate at this time.

92.   Plaintiffs desire a judicial determination of their rights against Defendants as it

pertains to the Mims Order, Resolution 154-2020, and Resolution 20-369, and the

enabling statutes for said order and resolutions.

93.   It is appropriate and proper that a declaratory judgment be issued, pursuant to K.S.A.

60-1701 et. seq., declaring unconstitutional all relevant portions of Mims Order,

Resolution 154-2020, Resolution 20-369, and the enabling statutes at issue in this

case.

94.   Pursuant to K.S.A. 60-901 et. seq., it is appropriate that this Court issue a temporary

injunction, and/or preliminary and permanent injunction prohibiting enforcement of

Mims Order, Resolution 154-2020, and/or Resolution 20-369 and/or the enabling

statutes.

## CONSTITUTIONAL VIOLATIONS

**Claim One: The mask mandate of Mims Order violates the right to privacy, the
right to make medical decisions, and is arbitrary, capricious, and vague in
violation of Due Process clause of Fourteenth Amendment to the United States
Constitution (42 U.S.C. § 1983).**

95.   Plaintiffs Sutter and McCoy reallege and incorporate by reference all previous

paragraphs.

96.   By reason of the aforementioned acts, enforced under color of state law, the

Defendants have deprived the Plaintiffs Sutter and McCoy of their right to privacy,

personal autonomy, bodily integrity, and the right to make and/or refuse unwanted

medical treatment secured by the Fourteenth Amendment to the United States

Constitution and 42 USC § 1983. Carey v. Population Servs., Int'l, 431 U.S. 678, 684,

97 S. Ct. 2010, 2016, 52 L. Ed. 2d 675 (1977); Rochin v. California, 342 U.S. 165,

172, 72 S.Ct. 205, 209-210, 96 L.Ed. 183 (1952); Schmerber v. California, 384 U.S.

757, 772, 86 S.Ct. 1826, 1836-1837, 16 L.Ed.2d 908 (1966); Cruzan by Cruzan v.

Dir., Missouri Dep't of Health, 497 U.S. 261, 278, 110 S. Ct. 2841, 2851, 111 L. Ed.

2d 224 (1990).

97.   The right to privacy protects Plaintiffs Sutter and McCoy's personal autonomy and bodily integrity from intrusion by the government.  The mask mandate of the Mims Order violates the Plaintiffs Sutter and McCoy's right to privacy.

98.   The mask mandate of the Mims Order violates the Plaintiffs Sutter and McCoy's  right to make personal medical decisions, and/or refuse unwanted medical treatment.

99.   The mask mandate of the Mims' Order lacks any rational basis, is arbitrary, capricious, and vague, and has no real or substantial relation to the objectives of the mandate, and are a palpable invasion of the rights secured by fundamental law in violation of the Due Process Clause of the Fourteenth Amendment.

100.   As a direct and proximate result of Defendants' violation of the Fourteenth Amendment as set forth in this Complaint, Plaintiffs Sutter and McCoy are threatened with an impending, probable injury and irreparable harm, including the loss of their fundamental rights, and the threat of criminal prosecution for exercising said rights, entitling them to declaratory and injunctive relief.

**Claim Two: The mask mandate of Mims Order violates the right to freedom of speech as protected by First Amendment to the United States Constitution (42 U.S.C. § 1983).**

101.   Plaintiffs Sutter and McCoy reallege and incorporate by reference all previous paragraphs.

102.   By reason of the aforementioned acts, enforced under color of state law, the Defendants have deprived Plaintiffs Sutter and McCoy of their right to freedom of speech in violation of the First Amendment as applied to the States by the Due Process

Clause of the Fourteenth Amendment to the United States Constitution and 42 USC § 1983.

103. Wearing a face mask during this current and highly politicized pandemic has become a form of expression. Plaintiffs Sutter and McCoy oppose this message and thus they oppose the requirement to wear a face mask because it conveys this message. Further, Plaintiffs Sutter and McCoy oppose the mask mandate because science and data have shown that wearing a face mask pursuant to the Mim's Order is not medically required or necessary, and it is harmful to the wearer.

104. The mask mandate of the Mim's Order is compelling Plaintiffs Sutter and McCoy to express a message with which they disagree in violation of their rights protected by the First Amendment.

105. As a direct and proximate result of the Defendants' violation of the right o freedom of speech under the First Amendment, as set forth in this Complaint, Plaintiffs Sutter and McCoy have suffered irreparable harm, including the loss of their fundamental constitutional rights, and the threat of criminal prosecution for the exercise of said rights, entitling them to declaratory and injunctive relief.

**Claim Three: The prohibition against "mass gatherings" of the Mims Order violates the right to peaceably assemble and freedom of association in violation of the First and Fourteenth Amendments to the United States Constitution (42 U.S.C. § 1983).**

106. Plaintiffs reallege and incorporate by reference all previous paragraphs.

33

107.  By reason of the aforementioned acts, enforced under color of state law, the
      Defendants have deprived the Plaintiffs of their right to peaceably assemble in
      violation of the First Amendment as applied to the States by the Due Process Clause of
      the Fourteenth Amendment to the United States Constitution and 42 USC § 1983.

108.  "The right of peaceable assembly is a right cognate to those of free speech and free
      press and is equally fundamental." De Jonge v. Oregon, 299 U.S. 353, 364, 57 S.Ct.
      255, 81 L.Ed. 278 (1937).

109.  Attending events such as political gatherings, public meetings, or similar events is a
      right protected by the First Amendment, and is directly and completely prohibited
      and/or significantly curtailed by the Mims Order.

110.  As set forth in this Complaint, the prohibition against "mass gatherings" in the Mims
      Order violates the Plaintiffs' fundamental right to peaceably assemble in violation of
      the First and Fourteenth Amendments to the United States Constitution, including
      their right to attend a political protest of the Mims Order on December 5, 2020.

111.  As a direct and proximate result of the Defendants' violation of the right to peaceably
      assemble under the First and Fourteenth Amendments as set forth in this Complaint,
      Plaintiffs have suffered irreparable harm, including the loss of their fundamental
      constitutional rights, and the threat of criminal prosecution for the exercise of said
      rights, entitling them to declaratory and injunctive relief.

**Claim Four: The business curfew provision of the Mims Order violates procedural due process under the Fourteenth Amendments to the United States Constitution (42 U.S.C. § 1983).**

112.    Plaintiffs reallege and incorporate by reference all previous paragraphs.

113.    Procedural due process ensures the government will not deprive a party of life, liberty, or property, without engaging in fair procedures to reach such a decision.

114.    Procedural due process requires that an individual be given the opportunity to be heard in a meaningful time and a meaningful manner.

115.    In this context, a health order impacting a business operation and/or earning a living, coupled with interests in a license(s), is or should be, enough to trigger procedural due process guarantees.

116.    The Mims Order does not provide a pre- or postdeprivation hearing process of any kind. The lack of a pre- and post-deprivation hearing violates procedural due process.

117.    There is no hearing process contained within the Order, but if there were such a process, the Defendants have the burden of establishing that Plaintiffs must remain subjected to the Mims Order. Speiser v. Randall, 357 U.S. 513 (1958), Nelson v. Colorado, 137 S. Ct. 1249 (2017).

118.    The Mims Order's restaurant and bar curfew regime constitutes a "deprivation" in the constitutional sense.

35

119. On its face and as applied, the Mims Order violates the Fourteenth Amendment to the United States Constitution because it does not provide a pre- or post-deprivation hearing process, and if there were a hearing process, the burden must be on the Defendants.

120. As a direct and proximate result of the Defendants' violation of procedural due process of law under the Fourteenth Amendment, as set forth in this Complaint, Plaintiffs have and continue to suffer irreparable harm, including direct economic harm, and the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief.

**Claim Five: The business curfew provision of the Mims Order violates substantive due process under the Fourteenth Amendments to the United States Constitution (42 U.S.C. § 1983).**

121. Plaintiffs reallege and incorporate by reference all previous paragraphs.

122. The Fourteenth Amendment "includes a substantive component that bars arbitrary, wrongful, government action regardless of the fairness of the procedures used to implement them." County of Butler v. Thomas W. Wolf, 2:20-CV-00677, (ECF. Doc. 79), 2020 WL 5510690, at *25 (E.D. Penn., Sep. 14, 2020).

123. Substantive due process protects against certain exercises of governmental power.

124. In this context, Plaintiffs have or should have the requisite liberty or property interest to trigger substantive due process guarantees.

125. The Order violates substantive due process for all of the following reasons, when considered individually or collectively:

36

a. Defendant Mims acted *ultra vires* by creating and promulgating a restaurant and bar curfew regime;

b. The Mim's Order does not set forth any process or means to challenge the Order;

c. The Mims Order is arbitrary, capricious, irrational, and abusive toward restaurants and bars in general and Plaintiffs in particular because there is no discernable justification, or such justification is too attenuated, that restaurants and bars are unique vectors for the spread of COVID-19, in general, or as applied to Plaintiffs; because there is no discernable justification, or such justification is too attenuated, to treat Plaintiffs the same as, or similar to, other restaurants and bars regardless of Plaintiffs' COVID-19 mitigation protocols; because there is no discernable justification, or such justification is too attenuated, that ordering alcohol after a certain time increases the spread of COVID-19.

126.    On its face and as applied, the Order violates the Fourteenth Amendment to the United States Constitution.

127.    As a direct and proximate result of the Defendants' violation of substantive due process of law under the Fourteenth Amendment, as set forth in this Complaint, Plaintiffs have and continue to suffer irreparable harm, including direct economic loss, and the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief.

**Claim Six: The enabling statutes violate the right to due process under the Fourteenth Amendments to the United States Constitution (42 U.S.C. § 1983). (Void for Vagueness)**

128.  Plaintiffs reallege and incorporate by reference all previous paragraphs.

129.  An enactment is void for vagueness if it "**is so standardless that it authorizes or encourages seriously discriminatory enforcement.**" F.C.C. v. Fox Television Stations, Inc., 567 U.S. 239, 253 (2012); *see also* Welch v. United States, 136 S. Ct. 1257 (2016).

130.  The health statutes at issue do not define or otherwise establish sufficient standards necessary to prohibit or discourage seriously discriminatory enforcement. Instead, the statutes authorize a local health officer to "prohibit public gatherings" and to the extent relied upon, take "all known measures." The lack of standards has caused seriously discriminatory enforcement in this case, i.e.: the mask mandate, the prohibition of "mass gatherings," the creation of the business curfew regime, and their criminal enforcement under Resolutions 154-2020 and 20-369.

131.  As a direct and proximate result of the enabling statutes, as set forth in this Complaint, the Plaintiffs have and continue to suffer irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief.

**Claim Seven: The enabling statutes violate the Unlawful Delegation and Separation of Powers Doctrine Under the Kansas Constitution and/or the Defendants have Exceeded Their Authority.**

132.  Plaintiffs reallege and incorporate by reference all previous paragraphs.

133.   The non-delegation doctrine prohibits the delegation of governmental power to
       unelected and politically unaccountable bodies. Schneider v. Kansas Sec. Comm'r, 54
       Kan. App. 2d 122, 146 (2017). The non-delegation doctrine "flows from the separation
       of powers principles embodied in Art. 2, § 1 of the Kansas Constitution, which
       provides that the legislative power of this state shall be vested in a house of
       representatives and senate." *Id.*.

134.   "Article 2 of the Kansas Constitution gives the legislature the **exclusive** power to pass,
       amend, and repeal statutes." State ex rel. Morrison v. Sebelius, 285 Kan. 875, 898
       (2008) (emphasis added). *See also* State ex rel. Stephan v. Finney, 251 Kan. 559
       (1992).

135.   Only the legislature can legislate. State ex rel. Tomasic v. Unified Gov't of Wyandotte
       Cty./Kansas City, Kan., 264 Kan. 293, 303 (1998) ("If the constitution does not
       authorize a delegation of such legislative power, then the delegation is improper as a
       violation of the separation of powers doctrine and art. 2, § 1, which vests legislative
       power with the legislature only.").

136.   "If the legislature has included specific standards in a delegation, then it has already
       enacted the law and it is simply delegating the administrative power to administer the
       law, based on the standards included in the delegation. On the other hand, if the
       legislature has not included specific standards within a delegation, then the legislature
       has delegated the legislative power to make the law. Such delegation is improper

without constitutional authorization." <u>State ex rel. Tomasic v. Unified Gov't of Wyandotte Cty./Kansas City, Kan.</u>, 264 Kan. 293, 303–04 (1998).

137. If and to the extent the Mims Order constitutes legislative action, this standardless delegation by the enabling statutes constitutes an unconstitutional delegation of power.

138. As a consequence of the enabling statutes, Defendant Mims has, among other things, and for all intents and purposes, created his own regulatory regime that departs from state law, and is now criminally enforceable pursuant to Resolutions 154-200 and 20-369..

139. Either the authority constitutes an unlawful delegation of power, or the Defendants have exceeded their authority.

140. Either way, as a direct and proximate result of the Defendants' actions, as set forth in this Complaint, the Plaintiffs have and continue to suffer irreparable harm, entitling them to declaratory and injunctive relief.

**Claim Eight: The mask mandate of the Mims Order violates Section 1 of the Kansas Bill or Rights.**

141. Plaintiffs Sutter and McCoy reallege and incorporate by reference all previous paragraphs.

142. Kan. Const. Bill of Rts. § 1 states as follows: "All men are possessed of equal and inalienable natural rights, among which are life, liberty, and the pursuit of happiness."

143. Firmly embedded within Section 1 of the Kansas Bill of Rights, and judicially enforceable in Kansas courts, is the right to personal autonomy, which includes an

individual's decisions affecting one's physical health, family formation, and family life. Hodes & Nauser, MDs, P.A. v. Schmidt, 309 Kan. 610, 645, 440 P.3d 461, 483 (2019)("At the core of the natural rights of liberty and the pursuit of happiness is the right of personal autonomy, which includes the ability to control one's own body, to assert bodily integrity, and to exercise self-determination. This ability enables decision-making about issues that affect one's physical health, family formation, and family life. Each of us has the right to make self-defining and self-governing decisions about these matters.")

144. The strict scrutiny standard is employed once an infringement of Section 1 has been proven, regardless of degree of the infringement. Hodes & Nauser, MDs, P.A. v. Schmidt, 309 Kan. 610, 669, 440 P.3d 461, 496 (2019).

145. By reason of the aforementioned acts, the Defendants have infringed and deprived Plaintiffs Sutter and McCoy of their right to life, liberty, and the pursuit of happiness in violation of Section 1 of the Kansas Constitution.

146. As a direct and proximate result of the Defendants' violation of Section 1 of the Kansas Bill of Rights, Plaintiffs Sutter and McCoy have suffered irreparable harm, including the loss of their fundamental constitutional rights, and the threat of criminal prosecution for the exercise of said rights, entitling them to declaratory and injunctive relief.

**REQUEST FOR RELIEF**

Plaintiffs respectfully request the Court to grant the following relief:

147.  Declaratory judgment that the mask mandate of the Mims Order, Resolution 154-2020, and Resolution 20-369 violates the First and Fourteenth Amendments to the United States Constitution, and Section 1 of the Kansas Constitution, on its face and as applied to Plaintiffs Sutter and McCoy; declaratory judgment that the mass gathering and curfew mandates of the Mims Order violates the First and Fourteenth Amendments to the United States Constitution, on its face and as applied to the remaining Plaintiffs; and the enabling statutes violate the Fourteenth Amendment to the United States Constitution, and violate the unlawful delegation and separation of powers doctrines under the Kansas Constitution, on their face and as applied to Plaintiffs; and/or Defendants acted ultra vires, and/or in the alternative, to the extent the Mims Order, Resolution 154-2020, and Resolution 20-369 relies upon KSA § 65-202 ("all known measures" provision), the Order and Resolutions are unenforceable.

148.  For entry of a temporary restraining order, and/or preliminary and/or permanent prospective injunctive relief, enjoining Defendants, Defendants' officers, agents, employees, attorneys, servants, assigns, and all those in active concert or participation who receive, through personal service or otherwise, actual notice of this Court's order, from enforcing or directing the enforcement of the Mims Order, Resolution 154-2020, and Resolution 20-369, either because the Order and Resolutions violates the First and Fourteenth Amendments to the United States Constitution, or violate Section 1 of the

Kansas Bill of Rights, or because the enabling statutes violate the Fourteenth Amendment to the United States Constitution or because the enabling statutes violate the Kansas Constitution, or because the Order and Resolutions are ultra vires, thus allowing Plaintiff and others similarly situated, to be free from the mask mandate, the mass gathering prohibition, and the restaurant/bar curfew regime of the Mims Order, and its criminal enforcement through Resolution 154-2020 and Resolution 20-369.

149.    Reasonable costs and attorney's fees under 42 U.S.C. § 1988 and other applicable law; and

150.    Such other legal or equitable relief as this Court deems appropriate and just.

### Jury Demand

151.    Plaintiffs request a jury trial on all issues so triable pursuant to K.S.A. 60-238(b).

43

VERIFICATION

STATE OF KANSAS            )
                          )
COUNTY OF SEDGWICK  )


David L. Miller, being of lawful age and duly sworn upon oath, declares that he has

read the foregoing petition, he is familiar with the contents contained herein, and that all

statements are true and accurate to the best of my knowledge and belief.


David L. Miller #26928
The Law Office of David L. Miller
7200 W. 13th St. N., Suite 212
Wichita, Kansas 67212
(316) 201-6414
DavidLMillerLaw@gmail.com
Attorney for Plaintiffs


Subscribed and sworn to before me this 25th day of November, 2020.


Notary Public


My Commission Expires:

8/24/24


TIFFANY MILLER
Notary Public - State of Kansas
My Appointment Expires 8/24/24

44



*Sedgwick County...*
*working for you*

## EMERGENCY PUBLIC HEALTH ORDER OF THE
## SEDGWICK COUNTY LOCAL HEALTH OFFICER
### AMENDING AND REPLACING THE EMERGENCY
### PUBLIC HEALTH ORDER ISSUED ON NOVEMBER 13, 2020

November 24, 2020

*Applicable within the entirety of Sedgwick County, Kansas*

This Emergency Public Health Order is effective the 27th day of November, 2020, at 12:01 A.M. to slow the spread of COVID-19 in Sedgwick County, Kansas pursuant to the authority provided in K.S.A. 65-119, K.S.A. 65-202, and other applicable laws or regulations.

WHEREAS, the Local Health Officer is authorized and required, pursuant to K.S.A. 65-119 and K.S.A. 65-202, to immediately exercise and maintain a supervision over known or suspected cases of any infectious or contagious disease during its continuance, and to issue orders seeing that all such cases are properly handled; and

WHEREAS, the Local Health Officer is appointed by Sedgwick County pursuant to K.S.A. 65-201 and is authorized, pursuant to K.S.A. 65-119(a), to prohibit public gatherings when necessary for the control of any and all infectious or contagious diseases, and to use all known measures to prevent the spread of any infectious, contagious, or communicable disease pursuant to K.S.A. 65-202; and

WHEREAS, the United States Department of Health and Human Services declared a public health emergency for COVID-19 beginning January 27, 2020, with now more than 12,300,000 cases of the illness and more than 257,000 deaths as a result of the illness across the United States; and

WHEREAS, the World Health Organization declared a pandemic on March 11, 2020; and

WHEREAS, a State of Disaster Emergency was proclaimed for the State of Kansas on March 12, 2020 and remains in effect at this time; and

WHEREAS, on March 13, 2020, the President of the United States pursuant to Sections 201 and 301 of the National Emergencies Act, 50 U.S.C. § 1601, et seq. and consistent with Section 1135 of the Social Security Act, as amended (42 U.S.C. § 5121-5207 (the "Stafford Act"); and

1

$Exhibit \ 1$

WHEREAS, as of this date, in Kansas there have been 142,059 reported positive cases of COVID-19 spread among all 105 counties, including 1,456 deaths; and

WHEREAS, on March 16, 2020, the Chairman of the Board of County Commissioners of Sedgwick County issued a state of local disaster emergency declaration, which remains in place at the time of this Order; and

WHEREAS, COVID-19 is a respiratory disease that spreads easily from person to person and may result in serious illness or death; and

WHEREAS, COVID-19 has resulted in 21,625 reported positive cases of COVID-19 in Sedgwick County and the deaths of 149 Sedgwick County residents; and

WHEREAS, the spread of COVID-19 endangers the health, safety, and welfare of persons and property within Sedgwick County, Kansas; and

WHEREAS, to reduce the spread of COVID-19, measures that are recommended and considered effective by the Centers for Disease Control and Prevention ("CDC") include, among other measures, avoiding close contact with other people and covering one's mouth and nose with mask or other face covering when in public settings; and

WHEREAS, the increased spread of COVID-19 also presents a serious threat to the continued effective operation of the local economy within Sedgwick County; and

WHEREAS, wearing a mask in public is one of the easiest and most effective ways to protect oneself and others, help keep our businesses open and our economy running, and keep children in school; and

WHEREAS, large public gatherings lead to heightened risks of large-scale COVID-19 person-to-person transmission; and

WHEREAS, the intent of this Order is not to deprive any person or entity of any rights protected by the United States Constitution, the Kansas Constitution, or any other law, but merely to set forth restrictions which would best protect Sedgwick County residents against the community spread of COVID-19; and

WHEREAS, with regard to matters of public health, the Supreme Court of the United States has venerable precedent from 1905 which indicates that, "a community has the right to protect itself against an epidemic of disease which threatens the safety of its members…" (*Jacobson v. Massachusetts*, 197 U.S. 11); and

WHEREAS, in 1957, the Supreme Court of Kansas has stated that, "[a]mong all the objects sought to be secured by government, none is more important than the preservation of the public health; and, an imperative obligation rests upon the state through its proper instrumentalities or agencies to take all necessary steps to accomplish this objective. Statutes enacted for this purpose should be liberally construed and the most extensive

power may be conferred on administrative boards, either state or local, to carry out such purpose." (*State ex rel. Anderson v. Fadely*, 180 Kan. 652, internal citations omitted); and

WHEREAS, in-person dining in restaurants and in-person activities within bars, night clubs, and other businesses licensed to sell alcohol for on-premises consumption present heightened risks of person-to-person spread of COVID-19 because the nature eating food and drinking beverages in such businesses generally involves customers being in close proximity with other customers for extended periods of time while not wearing masks or other face coverings; and

WHEREAS, within Sedgwick County, both the number of positive cases and the percentage of individuals tested with positive COVID-19 test results (the 14-day rolling average is 22.7%, as November 23, 2020) have increased significantly in the past weeks; and

WHEREAS, the intensive care units at the largest hospitals within Sedgwick County are at or very near full capacity, and leadership within such hospitals have voiced concerns about their capacity to serve the community's general medical needs while being overwhelmed due to the large influx of COVID-19 hospitalizations; and

WHEREAS, in a report dated November 15, 2020, the White House Coronavirus Task Force identified Kansas as being in the "red zone" and recommended that Kansas take stronger actions to control the spread of COVID-19 due to the state's high rate of COVID-19 cases per 100,000 residents (9th highest among states) and the state's high test positive rate (5th highest among states); and

WHEREAS, for the aforementioned and other reasons, and in recognition and furtherance of the County's responsibility to provide for and ensure the health, safety, security, and welfare of the people of Sedgwick County, requiring that masks or other face coverings be worn in public, limiting the size of public gatherings, requiring social distancing, and placing certain other restrictions on activities are all measures that can be taken to slow and reduce the spread of COVID-19.

NOW, THEREFORE, BE IT ORDERED by the Sedgwick County Local Health Officer, pursuant to the above authorities that:

## Section I.    Definitions

As used within this Order, the following terms shall have the following meanings:

1.  "Business or organization", whether the terms are used together or individually, within this Order means any person, firm, formal business type, or other entity, who solely or jointly and severally along with others, shall be in charge, care, and/or control of the business activity, structure, or premises. As stated within this definition, "any person" includes any owner, manager, employee, or agent of the business or organization.

3

2.   "Mask or other face covering" means a covering of the nose and mouth that is secured to the head with ties, straps, or loops over the ears or secured to the head by other means or devices or simply wrapped around the lower face. A mask or other face covering can be made of a variety of synthetic and natural fabrics, including cotton, silk, or linen. Ideally, a mask or other face covering should have two or more layers. A mask or other face covering may be factory-made, sewn by hand, or can be improvised from the household items such as scarfs, bandanas, t-shirts, sweatshirts, or towels. The definition of "mask or other face covering" includes a face shield. The definition of "mask or other face covering" does not include a covering that is equipped with a one-way valve or vent through which air can be exhaled.

3.   "Mass gatherings" mean gatherings of individuals within specific enclosed, confined, or designated public spaces, whether indoors or outdoors. Within this definition, distinct buildings, distinct rooms, or outdoor spaces (as opposed a building's indoor space) shall be considered as distinct spaces. Due to the transitory nature of consumer activity within retail stores, retail stores shall not be considered as mass gatherings. Mass gatherings also do not include restaurants, bars, night clubs, other businesses licensed to sell alcohol for on-premises consumption, fitness centers, and health clubs. Mass gatherings do not include normal operations in spaces where individuals may be in transit or coming and going from one location or another (e.g., walking down the street).

4.   "Physical barrier" means a partition (e.g., Plexiglas) or a wall that is impervious to air circulation that separates individuals from one another.

5.   "Public space" means any indoor or outdoor space or area that is open to the public; this does not include private residential property or private offices or workspaces that are not open to customers or public visitors.

6.   "Retail store" means a business or organization that sells finished goods to consumers and includes grocery stores, drug stores, department stores, convenience stores, and other similar stores. The term "retail store" does not include limited time sales events, trade shows, and similar events and occurrences, which would instead be analyzed pursuant to this Order's provisions regarding mass gatherings.

7.   "Social distancing" means the physical separation of at least 6 feet between one individual and another individual.

**Section II.   Wearing of Masks or Other Face Coverings.**

1.   Individuals. Any person within Sedgwick County shall cover their mouth and nose with a mask or other face covering when they are in the following situations:
    a.   Present within any indoor public space;

      b.      While outdoors and in line waiting to enter an indoor public space;

      c.      While outdoors in a mass gathering; and

      d.      While riding on public transportation or while in a taxi, private car service, or ride-sharing vehicle.

2.      Businesses and Organizations. All businesses and organizations in Sedgwick County must both: (1) make reasonable efforts to inform members of the public as to applicable mask or other face covering requirements, and (2) require all employees, customers, visitors, members, or members of the public to wear a mask or other face covering when:

      a.      Employees are working in any space visited by customers or members of the public, regardless of whether anyone from the public is present at the time;

      b.      Employees who are working in any space where food is prepared or packaged for sale or distribution to others;

      c.      Customers, members, visitors, or members of the public are in a facility managed by the business or organization; or

      d.      Employees are in any room or enclosed area where other people (except individuals who reside together) are present and unable to maintain a 6-foot distance except for infrequent or incidental moments of closer proximity.

"Reasonable efforts to inform members of the public", as described within Section II.2.(1) may include, but are not limited to, an individual or combined use of signs, greeters, intercoms, and directly addressing unmasked employees or customers.

An exemption to the requirement to wear a mask or other face covering must be expressed to businesses and organizations by employees, customers, members, visitors, and members of the public as an affirmative exception to the requirement. The mere existence of possible exemptions to the requirement to wear a mask or other face covering in no way releases a business or organization from its duty to ensure individuals are complying with the aforementioned requirement to wear a mask or other face covering.

3.      Exemptions. The following individuals are exempt from wearing masks or other face coverings in situations described in Sections II.1 and II.2.:

      a.      Persons age five years or under and, at the discretion of the school, children in kindergarten classes (children age two years and under in particular should not wear a face covering because of the risk of suffocation);

      b.      Persons with a medical condition, mental health condition, or disability that prevents wearing a face covering—this includes persons with a medical condition for whom wearing a face covering could obstruct breathing or who are unconscious, incapacitated, or otherwise unable to remove a face covering without assistance;

    c.    Persons who are hearing impaired, or communicating with a person who is hearing impaired, where the ability to see the mouth is essential for communication;

    d.    Persons for whom wearing a face covering would create a risk to the person related to their work, as determined by local, state, or federal regulators or workplace safety guidelines;

    e.    Persons who are obtaining a service involving the nose or face for which temporary removal of the face covering is necessary to perform the service;

    f.    Persons actively engaged in eating food or drinking a beverage;

    g.    Athletes who are engaged in an organized sports activity that allows athletes to maintain a 6-foot distance from others with only infrequent or incidental moments of closer proximity (note: this exemption shall not apply while an athlete is on the bench or sidelines and is not participating), and individuals who are actively participating in strenuous exercise that allows such individuals to maintain a 6-foot distance from others with only infrequent or incidental moments of closer proximity (note: this exemption does not apply while an individual is not actively participating in the strenuous exercise);

    h.    Persons who are engaged in an activity that a professional association, regulatory entity, medical association, or other public health-oriented entity recognized by the Local Health Officer has determined cannot be safely conducted while wearing a mask or other face covering;

    i.    Persons engaged in a court-related proceeding held or managed by the Kansas Judiciary;

    j.    Persons engaged in any lawful activity during which wearing a mask or other face covering is prohibited by law;

    k.    Persons who have one or more physical barriers between them and any other persons; and

    l.    Voters at election polling places.

**Section III.    Social Distancing and Mass Gatherings Provisions.**

1.    Individuals within a public space shall maintain 6 feet of social distancing from other individuals, unless such individuals reside together or an exception stated within Section III.3. or Section III.5. applies.

2.    Within a public space where a business or organization operates, such business or organization shall ensure that 6 feet of social distancing is maintained between individuals and groups of individuals, unless such individuals reside together or an exception stated within Section III.3. or Section III.5. applies.

3.    Exceptions to the 6 feet of social distancing requirements stated within Sections III.1. and III.2. shall include:

a.   Businesses and organizations that provide services that intrinsically require staff from the business or organization to be within less than 6 feet from the customer, such as dentists, hair salons, barber shops, nail salons, chiropractors, massage services, tattoo parlors, medical services providers, and similar services.

b.   Businesses where tasks completed by employees require such employees to work within 6 feet of one another.

c.   Persons who have one or more physical barrier between them and any other persons.

4.   Mass gatherings, as defined within Section I. of this Order, shall be limited to 25 total individuals and shall also be subject to the requirements within Sections III.1. and III.2. requiring social distancing. Any business or organization hosting or organizing a mass gathering shall be responsible for ensuring individuals' compliance with the mass gathering and 6 feet of social distancing requirements stated within this Order.

a.   While retail stores do not fit within the definition of "mass gatherings", retail stores shall be limited to 50 percent of the capacity permitted under the applicable fire code. Within retail stores, social distancing requirements stated within Sections III.1. and III.2. shall continue to apply.

b.   While restaurants, bars, night clubs, and other businesses licensed for the on-premises consumption of alcohol do not fit within the definition of "mass gatherings", all of the aforementioned business types shall limit the number of patrons to 100 or 50 percent of the capacity permitted under the applicable fire code, whichever is less. To the extent that a restaurant, bar, night club, or other business licensed for the on-premises consumption of alcohol may have separate dining rooms or outdoor dining areas, the aforementioned limitations on the maximum number of patrons shall apply to each specific room or outdoor dining area. Employees for these businesses and organizations shall not be included in any capacity calculation. While seated at a restaurant, bar, night club, or other business licensed to sell alcohol for on-premises consumption, individuals at the same table may be located within 6 feet of one another. However, there shall not be more than 8 individuals at any one table. Also, all tables and individuals located at a table shall be located at least 6 feet from any other tables and individuals seated at such tables. For purposes of this Section III.4.b., "table" means table. booth. or other distinct seating or dining area for a group of individuals.

c.   While fitness centers and health clubs do not fit within the definition of "mass gatherings", such businesses and organizations shall limit capacity to 100 individuals or 50 percent of the capacity permitted under the applicable fire code. whichever is less. To the extent the fitness center or

7

health club has separate dining rooms or outdoor workout areas, the aforementioned limitations on the maximum number of individuals shall apply to each specific room or outdoor workout area. Within fitness centers and health clubs, social distancing requirements stated within Sections III.1. and III.2. shall continue to apply.

d.  All of the businesses and organizations identified within Section III.4.a. through c. shall undertake reasonable efforts to ensure that their facilities remain in compliance with the applicable percent of fire code capacity limitations established within this Order.

5.  The following are exempt from Sections III.1., III.2., and III.4., and are instead encouraged to maintain social distancing as much as is feasible and to maintain 6 feet of social distancing between individuals who do not reside together, when feasible:
    a.  Religious facilities;
    b.  Wedding and funeral ceremonies (this exemption would not apply to a reception or gathering outside of the wedding or funeral ceremony, unless another exemption would apply);
    c.  Election polling places;
    d.  Licensed childcare facilities;
    e.  Pre-K through 12th grade schools and activities within the purview of the school's governing body;
    f.  Court facilities;
    g.  Airports, bus stations, and other public transportation activities;
    h.  Military and national guard activities;
    i.  Law enforcement, jail, or correctional facilities;
    j.  Any facility being used as part of a government or community response to a natural disaster;
    k.  Food pantries and shelter facilities;
    l.  Detoxification centers;
    m.  Hospitals and other medical facilities;
    n.  Long-term care and assisted living facilities;
    o.  Government service centers;
    p.  Manufacturing, processing, distribution, and production facilities; and
    q.  Utility facilities.

**Section IV.  Provisions Specific to Certain Activities.**  Notwithstanding any provision in Sections I, II, III, or IV to the contrary, the following requirements apply to these specific activities:

1.  Nail salons, barber shops, hair salons, tattoo parlors, dentists and other personal services businesses where 6 feet of social distancing is not feasible must only serve customers for pre-scheduled appointments or online check-in.

8

2.  Fitness centers and health clubs must frequently clean common touchpoints, which include but are not limited to benches, seating, and lockers.

3.  Fairs, festivals, carnivals, parades, trade shows, exhibitions, and other similar events shall not occur.

4.  All bars, night clubs, and other businesses licensed to sell alcohol for on-premises consumption must abide by a curfew and close any in-person dining and drinking areas so that they are vacated by 11:00 P.M., and remain closed until at least 5:00 A.M. or such later time that they may subsequently reopen pursuant to state or local law. However, such businesses may remain open between 11:00 P.M. and 5:00 A.M. for curbside, drive through, and delivery services (but not carry-out), pursuant to any limits established by state or local laws.

5.  All restaurants must abide by a curfew to close such in-person dining areas by 11:00 P.M., and have such in-person dining areas remain closed until at least 5:00 A.M. However, such businesses may remain open between 11:00 P.M. and 5:00 A.M. for curbside, drive through, and delivery services (but not carry-out).

6.  All recreational and youth organized sports tournaments, games, practices, and related events may still occur, but attendance shall be limited to a maximum of 2 attendees per participant and such activities shall remain subject to the social distancing and mass gathering provisions included within Section III of this Order. These provisions shall not apply to any collegiate sporting events and sporting events governed by Kansas State High School Activities Association and/or school boards.

7.  If a business or organization has multiple distinct components that fit within different portions of this Order, each distinct component shall be required to fit the requirements of this Order that apply most specifically to such component of the business or organization.

**Section V.    Lawful Order.** This Order is a lawfully issued order pursuant to K.S.A. 65-202 and K.S.A. 65-119(a), and is also a "public health directive" as identified within Section 9 of 2020 Special Session House Bill No. 2016. Individuals and organizations within Sedgwick County are required to comply with this Order. Failure to comply with this Order is a violation of Board of County Commissioners of Sedgwick County Resolution No. 154-2020 and can result in a fine of up to $500.00.

**Section VI.  Possible Review, Amendment, or Revocation.** Pursuant to Sections 37 and 38 of 2020 Special Session House Bill No. 2016, which amended K.S.A. 65-201 and 65-202, the Board of County Commissioners may review, amend, or revoke this Order.

**Section VII. Severability.** If any portion of this Order is found or determined to be invalid, such finding or determination shall only affect the portion of the Order that is at issue and shall not affect the validity of the remainder of the Order.

9

**Section IX. Effective Date; Conclusion.** This Order is effective at 12:01 A.M. on the 27th day of November, 2020, and shall remain in effect through 11:59 P.M. on the 9th day of January, 2021, unless it is amended, revoked, or replaced.

IT IS SO ORDERED this 24th day of November, 2020.

_Garold Minns M.D._

Garold Minns
Sedgwick County Local Health Officer, M.D.

Legal Publication

(Published in The Derby Informer on November 18, 2020)

RESOLUTION NO. 154 – 2020
DATE ADOPTED: 11/10/2020
DATE PUBLISHED: _____

A RESOLUTION OF THE BOARD OF COUN-
TY COMMISSIONERS OF SEDGWICK
COUNTY, KANSAS TO ESTABLISH THAT
NONCOMPLIANCE WITH AN ORDER OF
THE SEDGWICK COUNTY LOCAL HEALTH
OFFICER IS A VIOLATION OF THE SEDG-
WICK COUNTY CODE

WHEREAS, pursuant to K.S.A. 19-101, fourth, the
Board of County Commissioners has the power to
do all acts in relation to the concerns of the County,
necessary to the exercise of its corporate and ad-
ministrative powers; and

WHEREAS, pursuant to K.S.A. 19-101, fifth and
K.S.A. 19-101a, the Board of County Commission-
ers has the power to exercise the powers of home
rule to determine local affairs and government, in-
cluding performing all powers of local legislation and
administration it deems appropriate; and

WHEREAS, pursuant to K.S.A. 19-101, sixth, the
Board of County Commissioners has the power to
exercise such other and further powers as may be
especially conferred by law; and

WHEREAS, pursuant to K.S.A. 19-101c, the Kan-
sas Legislature has stated that county home rule
powers "shall be liberally construed for the purpose
of giving to counties the largest measure of self-gov-
ernment"; and

WHEREAS, pursuant to K.S.A. 19-101d, the
Board of County Commissioners has the power to
enforce all resolutions passed pursuant to county
home rule powers; and

WHEREAS, pursuant to K.S.A. 19-101d, such
resolutions may be enforced by enjoining violations
or prescribing penalties for violations by fine; and

WHEREAS, pursuant to K.S.A. 19-101d and
K.S.A. 19-4701, et sec., violations of Sedgwick
County codes and resolutions may be prosecuted
in the Sedgwick County Court and violations incur
fines pursuant to Section 8-5 of the Sedgwick Coun-
ty Code; and

WHEREAS, pursuant to K.S.A. 65-202, the
Sedgwick County Local Health Officer "shall use
all known measures to prevent the spread of any...
infectious, contagious or communicable disease..."
and

WHEREAS, the Board of County Commissioners
desires to make any noncompliance with an order of

the Sedgwick County Local Health Officer a violation
of the Sedgwick County Code.

NOW, THEREFORE, BE IT RESOLVED BY
THE BOARD OF COUNTY COMMISSIONERS OF
SEDGWICK COUNTY, KANSAS THAT:

Section 1. Order of the Sedgwick County Lo-
cal Health Officer.
The Sedgwick County Local Health Officer,
appointed by the Board of County Commission-
ers pursuant to K.S.A. 65-201, is vested with the
statutory authority to issue orders to prevent the
spread of infectious, contagious, and communicable
diseases. When the Sedgwick County Local Health
Officer issues an order to prevent the spread of an
infectious, contagious, or communicable disease,
individuals, businesses, and organizations must
comply with such order.

Section 2. Order of the Sedgwick County Lo-
cal Health Officer, as Amended by the Board of
County Commissioners.
In the event that an order issued by the Sedgwick
County Local Health Officer, as described within
Section 1 of this Resolution, has been amended
by the Board of County Commissioners pursuant
to K.S.A. 65-201 or K.S.A. 65-202, individuals, busi-
nesses, and organizations must comply with such
amended order.

Section 3. Violation of an Order Issued by the
Sedgwick County Local Health Officer; Penalty.
Failure of an individual, business, or organization
to comply with an order issued by the Sedgwick
County Local Health Officer to prevent the spread of
an infectious, contagious, or communicable disease
shall be a violation of this Resolution. Violations of
this Section shall be classified as Class I offenses
within Section 8-5 of the Sedgwick County Code.

Section 4. Violation of an Order Issued by
the Sedgwick County Local Health Officer, as
Amended by the Board of County Commission-
ers; Penalty.
Failure of an individual, business, or organization
to comply with an order issued by the Sedgwick
County Local Health Officer to prevent the spread of
an infectious, contagious or communicable disease,
as amended by the Board of County Commissioners
pursuant to K.S.A. 65-201 or K.S.A. 65-202, shall
be a violation of this Resolution. Violations of this
Section shall be classified as Class I offenses within
Section 8-5 of the Sedgwick County Code.

Section 5. Individuals Authorized to Enforce
Resolution.
Any individual identified as a "code enforcement
officer", as the term is defined within Section 1-2
of the Sedgwick County Code, shall be authorized

to issue a uniform complaint and notice to appear
for any individuals, businesses, or organizations
accused of violating this Resolution.

Section 6. Jurisdiction.
This Resolution shall be effective within the un-
incorporated area of Sedgwick County. This Res-
olution shall also be effective within any cities within
Sedgwick County whose governing bodies have
consented to such Resolution applying within their
city's city limits and that have entered into separate
agreements with Sedgwick County providing for en-
forcement within their city limits.

Section 7. Effective Date.
This Resolution shall be effective upon its publica-
tion in the official county newspaper.

Commissioners present and voting were:

| | |
|---|---|
| PETER F. METZNER | AYE |
| MICHAEL B. O'DONNELL, II | NO |
| DAVID T. DENNIS | AYE |
| LACEY D. CRUSE | AYE |
| JAMES M. HOWELL | NO |

Dated this 10th day of November, 2020.

BOARD OF COUNTY COMMISSIONERS
OF SEDGWICK COUNTY, KANSAS

_____
PETER F. METZNER, Chairman
Commissioner, First District

_____
LACEY D. CRUSE, Chair Pro Tem
Commissioner, Fourth District

_____
MICHAEL B. O'DONNELL, II
Commissioner, Second District

_____
DAVID T. DENNIS
Commissioner, Third District

_____
JAMES M. HOWELL
Commissioner, Fifth District

ATTEST:

_____
KELLY B. ARNOLD, County Clerk

APPROVED AS TO FORM:

_____
JUSTIN M. WAGGONER
Assistant County Counselor

Exhibit 2

First Published in the Wichita Eagle on November 22, 2020

RESOLUTION NO. 20-369

## A RESOLUTION OF THE GOVERNING BODY OF THE CITY OF WICHITA ALLOWING ENFORCEMENT OF COUNTY RESOLUTION 154-2020 RELATED TO ORDERS OF SEDGWICK COUNTY LOCAL HEALTH OFFICER

WHEREAS, securing the health, safety, and economic well- being of residents of the City of Wichita is the priority of the City Council; and

WHEREAS, the United States Departments of Health and Human Services declared a public health emergency for COVID -19 beginning January 27, 2020, and

WHEREAS, the World Health Organization declared a pandemic on March 11, 2020;

WHEREAS, over the last several recent weeks there have been a significant spike in the numbers of COVID -19 cases, hospitalizations, and deaths in Sedgwick County and across the nation; and

WHEREAS, on November 10, 2020, the Sedgwick County Commission enacted Resolution No. 154-2020, providing for enforcement of orders of the Sedgwick County Health Officer related to infectious, contagious or communicable disease in unincorporated areas and incorporated cities within Sedgwick County; and

WHEREAS, pursuant to the City's Home Rule and police powers to protect the health and safety of its citizens, the City hereby adopts the following:

NOW, THEREFORE, BE IT RESOLVED by the City Council of the City of Wichita that:

1.  The City of Wichita hereby consents to Sedgwick County Resolution 154-2020 applying and being effective within the corporate city limits of the City of Wichita;

Exhibit 3

2. The City of Wichita will enter into an agreement or Memorandum of Understanding as appropriate with Sedgwick County providing for enforcement of Resolution 154-2020.

3. The City of Wichita acknowledges that the authority and responsibility for the prosecution and enforcement of the Order of the Sedgwick County Local Health Officer resides with code enforcement officers employed by Sedgwick County.

4. Law enforcement officers and code enforcement officers employed by the City of Wichita are directed to provide assistance to Sedgwick County Code Enforcement officers to enforce the provisions of Sedgwick County Resolution 154-2020.

5. The City of Wichita reserves the right to rescind this Resolution and any agreement to enforce orders of the Sedgwick County Local Health Officer following 30 days written notice to the Sedgwick County Clerk.

6. This Resolution shall be effective upon publication of Sedgwick County Resolution 154-2020.

7. The Wichita City Clerk is hereby directed to publish this Resolution in the official newspaper of the City of Wichita.

Adopted by the City Council of the City of Wichita this 19th day of November 2020.


_____
Brandon Whipple, Mayor

ATTEST:


_____
Karen Sublett, City Clerk

APPROVED AS TO FORM:

_____
Jennifer Magana, City Attorney

ELECTRONICALLY FILED
2020 Nov 30 AM 9:46
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-001825-OT

**AFFIDAVIT OF** _____

COMES NOW, _____, being duly sworn, and affirms the following:

1. My name is _Chaomin Hsu_, and I am 42 years old.

2. I am the owner and manager of _Wichita's Ballroom_, located at _4600 W Kellogg Dr 67209_, in Wichita, (or whatever city), Sedgwick County, Kansas.

3. This affidavit is being submitted in support of the Complaint for Declaratory and Injunctive Relief.

4. In the course of my business, I take the following measures to mitigate the spread of COVID-19, and protect my customers and employees: _mask, temperature scan, disinfection, social distance, disinfec table, plastic cup, hand sanitizer at visible corner, table, bathroom, entrance_

5. Due to the Emergency Order issued on November 13, 2020, I have had to close my establishment at 11 p.m.  This has had the following adverse financial and economic impact on my business:

_I lost 80% of income due to close at 11 pm, and 100 capacity._

6. I was never allowed a hearing or any opportunity to be heard before the

Emergency Order of November 13, 2020, went into effect, and became criminally

enforceable on or after November 18, 2020, in Sedgwick County, and on or after

November 22, 2020, in the City of Wichita.

FURTHER AFFIANT SAYETH NOT.


_____   $11 - 23 - 2020$
(SIGNATURE)


STATE OF KANSAS
COUNTY OF SEDGWICK

Signed and affirmed before me on _November 23, 2020_____ by _____


_____
(Signature of notarial officer)

Expiration Date: 1/31/2024

Best Toal
State of Kansas

Terri Ann Best Toal
Notary Public - State of Kansas
My Appt. Expires 1/31/2024

3

ELECTRONICALLY FILED
2020 Nov 30 AM 9:46
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-001825-OT

**AFFIDAVIT OF** _____

COMES NOW, _____, being duly sworn, and affirms the

following:

    1. My name is \_\_Bradley J Steven\_\_\_, and I am \_40\_ years old.

    2. I am the owner and manager of Club Indigo Old Town LLC dba Industry Old Town

located at \_126 N Mosley St  67202_____, in Wichita, (or whatever city),

Sedgwick County, Kansas.

    3. This affidavit is being submitted in support of the Complaint for Declaratory

and Injunctive Relief.

    4. In the course of my business, I take the following measures to mitigate the

spread of COVID-19, and protect my customers and

employees: \_We have tripled our purchased amounts of sanitizer, gloves and cleaning supplies

on a weekly basis.  During these periods we focus on cleaning, sanitizing and employee screening

,which we have continued to use.  We have sanitizer set up all around the bar and masks are \_\_\_\_

available to our customers._____

    5. Due to the Emergency Order issued on November 13, 2020, I have had to

close my establishment at 11 p.m. This has had the following adverse financial and

economic impact on my business:

\_Our concept is designed for bar service and with the government restrictions we have had to \_\_\_\_

close down twice we have also been hindered with both the 10pm and 11pm curfews. Sales are \_

at an all time low._____

6. I was never allowed a hearing or any opportunity to be heard before the

Emergency Order of November 13, 2020, went into effect, and became criminally

enforceable on or after November 18, 2020, in Sedgwick County, and on or after

November 22, 2020, in the City of Wichita.

FURTHER AFFIANT SAYETH NOT.


_____
(SIGNATURE)

STATE OF KANSAS
COUNTY OF SEDGWICK

Signed and affirmed before me on November 24, 2020 by _____


_____
(Signature of notarial officer)

Expiration Date: 1/31/2024

Terri Ann Best Toal
Notary Public - State of Kansas
My Appt. Expires 1/31/2024

3

ELECTRONICALLY FILED
2020 Nov 30 AM 9:46
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-001825-OT

**AFFIDAVIT OF** _____

COMES NOW, _____, being duly sworn, and affirms the

following:

1.  My name is Dallas Broz, and I am 41 years old.

2.  I am the owner and manager of Party Express LLC,

located at 13728 W. Kellogg Dr, in Wichita, (or whatever city),

Sedgwick County, Kansas.

3.  This affidavit is being submitted in support of the Complaint for Declaratory

and Injunctive Relief.

4.  In the course of my business, I take the following measures to mitigate the

spread of COVID-19, and protect my customers and

employees: Only customers known to each other

Use our services, all of which are private parties.

We sanitize and clean all vehicles after every trip.

_____

5.  Due to the Emergency Order issued on November 13, 2020, I have had to

close my establishment at 11 p.m.  This has had the following adverse financial and

economic impact on my business:

Due to a high volume of our customer base

frequenting bars and restaurants for entertainment

we have witnessed a noticeable decline

in business since the emergency orders in SG county.

During this time we have continued to maintain insurance, pay property tax on our physical location, lease payments and all other associated business expenditures. We have been offered no assistance from federal or local government. We have been harmed substantially due to the shutdown orders all while having no cases of Covid or evidence/data to support closures.

6. I was never allowed a hearing or any opportunity to be heard before the Emergency Order of November 13, 2020, went into effect, and became criminally enforceable on or after November 18, 2020, in Sedgwick County, and on or after November 22, 2020, in the City of Wichita.

FURTHER AFFIANT SAYETH NOT.

_____
(SIGNATURE)

STATE OF KANSAS
COUNTY OF SEDGWICK

Signed and affirmed before me on _November 23, 2020_ by _Dallas Broz_
_____

_____
(Signature of notarial officer)

Expiration Date: _06/15/2022_

RON FEHR
Notary Public, State of Kansas
My Appointment Expires
06/15/2022

3

ELECTRONICALLY FILED
2020 Nov 30 AM 9:46
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-001825-OT

**AFFIDAVIT OF** AUGUSTINE JOSEPH IACOPELLLI

COMES NOW, November 23rd 2020, being duly sworn, and affirms the

following:

1. My name is Augustine Joseph Iacopelli, and I am 42 years old.

2. I am an owner and manager of Augustino Brewing Company along with
   my spouse Bianca Jean Iacopelli,

located at 756 N Tyler Rd, in Wichita, Sedgwick County, Kansas.

3. This affidavit is being submitted in support of the Complaint for Declaratory

and Injunctive Relief.

4. In the course of my business, I take the following measures to mitigate the

spread of COVID-19, and protect my customers and employees: Socially distanced tables,

available outdoor seating, to-go and curbside sales, frequent cleaning of all surfaces,

bathrooms, and front and back of house areas with approved chemical cleaners. We also

have available masks and hand sanitizer for use upon request by guests.

5. Due to the Emergency Order issued on November 13, 2020, I have had to close

my establishment at 11 p.m.  This has had the following adverse financial and economic

impact on my business: Our business has dropped by about 15% already since this

Emergency Order was issued. While our establishment is not open past 11 p.m., the very

calling out of bars and restaurants as spreader locations of COVID-19, without

documented evidence or proof in Sedgwick County, has had the effect of scaring off some

of our customers who would otherwise be frequenting our establishment. This is very

unfair for our local politicians to be negatively impacting our business operations without

any due process or evidence of our industry's impact on the spreading of COVID-19. The

continuation of orders over the past several months has required us to obtain loans, which

may negatively impact our future solvency and ability to survive once this pandemic has passed. Failure to our ability to survive would place at least 6 employees jobs in jeopardy as well as our family's financial and personal well-being.

6. I was never allowed a hearing or any opportunity to be heard before the Emergency Order of November 13, 2020, went into effect, and became criminally enforceable on or after November 18, 2020, in Sedgwick County, and on or after November 22, 2020, in the City of Wichita.

6.  I was never allowed a hearing or any opportunity to be heard before the

Emergency Order of November 13, 2020, went into effect, and became criminally

enforceable on or after November 18, 2020, in Sedgwick County, and on or after

November 22, 2020, in the City of Wichita.

FURTHER AFFIANT SAYETH NOT.


(SIGNATURE)

STATE OF KANSAS
COUNTY OF SEDGWICK

Signed and affirmed before me on ___November 23, 2020___ by _____
_____

(Signature of notarial officer)

Expiration Date: __1/31/2024__

Terri Ann Best Toal
Notary Public - State of Kansas
My Appt. Expires 1/31/2024

3

ELECTRONICALLY FILED
2020 Nov 30 AM 9:46
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-001825-OT

**AFFIDAVIT OF** _____

COMES NOW, _____, being duly sworn, and affirms the

following:

    1.  My name is _Alan Brinkman_, and I am **37** years old.

    2.  I am the owner and manager of _the Stop_ _____,

located at _1450 S Washington_ _____, in Wichita, (or whatever city),

Sedgwick County, Kansas.

    3.  This affidavit is being submitted in support of the Complaint for Declaratory

and Injunctive Relief.

    4.  In the course of my business, I take the following measures to mitigate the

spread of COVID-19, and protect my customers and

employees: _I Require MASKS for Patrons And Employees._
_I Limit Capacity and Encourage Social distancing._
_We Have Hand Sanitizer Stations Throughout the BAR. We_
_Continue to Clean throughout the Night._

    5.  Due to the Emergency Order issued on November 13, 2020, I have had to

close my establishment at 11 p.m.  This has had the following adverse financial and

economic impact on my business:

_Limiting the Hours Has decreased Revenue By_
_Roughly 70%. Due to Decreased Revenues this_
_Has Caused Hardships to Pay and Retain Staff. We_
_Have Been vandalised during our Normal operating_

Hours which caused a loss of four New Security Cameras. Valued over a thousand dollars. Decreased Revenue Has also put a strain on Regular monthly Bills associated with maintaing a Business Such As Rent on the Building.

This Has also Caused extreme emotional Stress on Both managing Partners. As we Are Struggling Now to Pay on Personal obligations.

6. I was never allowed a hearing or any opportunity to be heard before the Emergency Order of November 13, 2020, went into effect, and became criminally enforceable on or after November 18, 2020, in Sedgwick County, and on or after November 22, 2020, in the City of Wichita.

FURTHER AFFIANT SAYETH NOT.

_____
(SIGNATURE)

STATE OF KANSAS
COUNTY OF SEDGWICK

Signed and affirmed before me on _November 23, 2020_ by _____
_____

_____
(Signature of notarial officer)

Expiration Date: 1/31/2024

> Terri Ann Best Toal
> Notary Public - State of Kansas
> My Appt. Expires 1/31/2024

3

ELECTRONICALLY FILED
2020 Nov 30 AM 9:51
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-001825-OT

**AFFIDAVIT OF** _____

COMES NOW, _____, being duly sworn, and affirms the following:

1. My name is _Kristi Ivy_, and I am **45** years old.

2. I am the owner and manager of _The Rusty Nail_,

located at _1155 S. Washington_, in Wichita, (or whatever city),

Sedgwick County, Kansas.

3. This affidavit is being submitted in support of the Complaint for Declaratory and Injunctive Relief.

4. In the course of my business, I take the following measures to mitigate the spread of COVID-19, and protect my customers and employees: _attached_

5. Due to the Emergency Order issued on November 13, 2020, I have had to close my establishment at 11 p.m. This has had the following adverse financial and economic impact on my business:

_attached_

Our team here at The Rusty Nail have gone above and beyond to ensure the safety of our customers, staff, vendors and families by implementing the following measures against Covid 19:

Eco-lab: leading global sanitation and disinfecting company sprays our entire building monthly with a hard surface live pathogen that continually kills off virus, including the Covid-19 pandemic we are facing. They have supplied us with table disinfectants, sanitation sprays and have provided our staff with how often and where all products can be used.

Teamed up with our Cintas suppliers and have an in-house wall system that precisely measures out another round of disinfecting, cleaning solutions and sanitation for all tables, floors, walls etc.

All tables are cleaned and disinfected between each use. Along with all menus, condiments etc. that may have come in contact with a customer or staff member.

We have removed over (20) twenty seats and have removed any tables that are not able to be maintained at (6) six feet safe distance.

Have wall mounted hand sanitizer stations along with bottles for customer/staff use throughout the entire building.

We replace all rugs weekly and all floors are sanitized before each shift.

Hired an outside cleaning staff to clean restrooms  daily and to sanitize all hard surfaces every hour.

Staff is mandated to wear masks at all times and gloves when required.

All patrons entering, standing etc. must adhere to mask mandates at all times.

Our kitchen is provided with an extra level of sanitation/disinfection which they use every single wipe down of their stations.

We quarantine and test any employee that may have been remotely in contact with anyone with a positive Covid-19 test.

Our staff and customers are family to us! We want each and every one of them to remain healthy and feel that we have gone above and beyond the needed to steps to maintain that level.

As of November 13th emergency order The Rusty Nail has experienced a loss of over $23K. That is over a $2100 per day. We are currently asking for voluntary layoffs and mandating layoffs to half, if not more, of our (30) thirty staff members soon if these hours remain limited.

Over 70% of our staff members rely almost solely on their wages here at The Rusty Nail. We have a very strong and loyal family with a very low turn-over rate. Any layoffs will ultimately affect this as each one of our employees will need to find outside, possibly permanent, work to maintain their households. Some if not most of our employees do not have unemployment benefits to fall back on. We will lose some of our best workers, creating future hardships for our very new company.

The Rusty Nail is a baby in the bar/restaurant business and these types of financial hardships, future uncertainty with staying open and hours is something we may not be able to survive. My business partner and I have invested our entire livelihoods and every ounce of energy into building this business from the ground up. We financially/emotionally can not survive staying open limited hours or the possibilities of being shut down again.

6. I was never allowed a hearing or any opportunity to be heard before the Emergency Order of November 13, 2020, went into effect, and became criminally enforceable on or after November 18, 2020, in Sedgwick County, and on or after November 22, 2020, in the City of Wichita.

FURTHER AFFIANT SAYETH NOT.

_____
(SIGNATURE)

STATE OF KANSAS
COUNTY OF SEDGWICK

Signed and affirmed before me on _November 24, 2020_ by _____

_____
(Signature of notarial officer)

Terri Ann Best Toal
Notary Public - State of Kansas
My Appt. Expires 1/31/2024

Expiration Date: _1/31/2024_

3

ELECTRONICALLY FILED
2020 Nov 30 AM 9:51
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-001825-OT

**AFFIDAVIT OF** _____

COMES NOW, _____, being duly sworn, and affirms the

following:

    1. My name is _Art Acuten_ , and I am ___ years old.

    2. I am the owner and manager of _A + J's MUSICROOM BAR + GRILL_

located at _602 S. Meridian Ave._ , in Wichita, (or whatever city),

Sedgwick County, Kansas.

    3. This affidavit is being submitted in support of the Complaint for Declaratory

and Injunctive Relief.

    4. In the course of my business, I take the following measures to mitigate the

spread of COVID-19, and protect my customers and

employees:_____

_____ _See attachment_ _____

_____

    5. Due to the Emergency Order issued on November 13, 2020, I have had to

close my establishment at 11 p.m. This has had the following adverse financial and

economic impact on my business:

_____ _See attachment_ _____

_____

_____

4. by tables set six feet apart), no more than 8 people @ a table. Also, staff are completing ~~thourough~~ thoroghly sanitizing tables, chairs, bars, and touchpoints throughout the establishment. Staff are wearing masks. If patrons are not wearing a mask, they will not be served. We also encourage people to use social distancing.

5. We have had a decrease in patrons visiting the establishment because they dont ~~also~~ want to come out for just a little bit of time. The majority of our business, and therefore our income, comes between 11:00 p.m. – 2:00 a.m., especially on the weekends. By closing @ 11:00, we are losing income which makes it difficult to pay bills like rent, utilities & payroll that still have to be paid whether we close @ 11:00 or @ 2:00.

6. I was never allowed a hearing or any opportunity to be heard before the
Emergency Order of November 13, 2020, went into effect, and became criminally
enforceable on or after November 18, 2020, in Sedgwick County, and on or after
November 22, 2020, in the City of Wichita.

FURTHER AFFIANT SAYETH NOT.


(SIGNATURE)

STATE OF KANSAS
COUNTY OF SEDGWICK

Signed and affirmed before me on _November 25, 2020_ by _____

_____

(Signature of notarial officer)

Terri Ann Best Toal
Notary Public - State of Kansas
My Appt. Expires 1/31/2024

Expiration Date: 1/31/2024

3

ELECTRONICALLY FILED
2020 Nov 30 AM 9:51
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-001825-OT

**AFFIDAVIT OF** _____

COMES NOW, _____, being duly sworn, and affirms the following:

1. My name is Kyle Okumura_____, and I am 31 years old.

2. I am the owner and manager of Revolution Lounge_____, located at 233 N. Mosley St._____, in Wichita, (or whatever city), Sedgwick County, Kansas.

3. This affidavit is being submitted in support of the Complaint for Declaratory and Injunctive Relief.

4. In the course of my business, I take the following measures to mitigate the spread of COVID-19, and protect my customers and employees: Revolution Lounge has incorporated that all employees wear face coverings during their shift. Posted signage requiring customers to wear protective face coverings and refusing entrance to those who don't have a face covering. Hand sanitizing stations have also been installed throught the premises. Seating along the bar has been removed to direct customers to congregate at proper seating areas where social distancing can be maintained.

5. Due to the Emergency Order issued on November 13, 2020, I have had to close my establishment at 11 p.m.  This has had the following adverse financial and economic impact on my business: Due to Revolution Lounge closing at 11 p.m., we have lost upwards of 90% of weekly sales. Business operations have currently seized as of November 13, 2020 and thus all current employees have been temporarily laid off.

6. I was never allowed a hearing or any opportunity to be heard before the Emergency Order of November 13, 2020, went into effect, and became criminally enforceable on or after November 18, 2020, in Sedgwick County, and on or after November 22, 2020, in the City of Wichita.

FURTHER AFFIANT SAYETH NOT.

(SIGNATURE)

STATE OF KANSAS
COUNTY OF SEDGWICK

Signed and affirmed before me on _November 25, 2020_ by _____

(Signature of notarial officer)

Terri Ann Best Toal
Notary Public - State of Kansas
My Appt. Expires 1/31/2024

Expiration Date: 1/31/2024

3

ELECTRONICALLY FILED
2020 Nov 30 AM 9:51
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-001825-OT

**AFFIDAVIT OF** _____

COMES NOW, _____, being duly sworn, and affirms the

following:

1. My name is ~~STEVEN PETERS~~ _____ _____ , and I am 43 years old.

2. I am the owner and manager of _Varshay's Cocktail Lounge_

located at _417 E Douglas Ave._____ , in Wichita, (or whatever city),

Sedgwick County, Kansas.

3. This affidavit is being submitted in support of the Complaint for Declaratory

and Injunctive Relief.

4. In the course of my business, I take the following measures to mitigate the

spread of COVID-19, and protect my customers and

employees: _We have stopped live music. We have removed half_
_the furniture and socially distanced the remaining furniture._
_Hand sanitizers are placed all over bars/tables/restrooms. Masks_
_are required by staff and customers. →_

5. Due to the Emergency Order issued on November 13, 2020, I have had to

close my establishment at 11 p.m.  This has had the following adverse financial and

economic impact on my business:

_Since the restrictions began my sales are down_
_approximately 92%. I have had to lay off_
_several staff members and get rid of amenities_
_at my bar. In the last 2 years 97% of our_

#4. We have shut down our dancefloor and capacity is at 50%. We also lowered our background music to a volume so low that everyone can have a normal conversation without yelling.



#5 Sales come between the hours of 10pm-2am. We tried opening for lunch, for over a year, but it didn't work. Due to the financial hardship the restrictions have cause we are approximately 4-6 weeks away from closing our doors for good. Before the restrictions were enacted our business was profitable and were from the day the doors opened. The fact that my business is on the edge of collapse is a direct result of the overreaching restrictions that were/have been unfairly placed on us.

OVER ⟶

2

#5 An example of Sales last year vs. current.

Sat. Nov. 23rd 2019   $5,601.99

Sat. Nov. 21st. 2020        $329.00

6.  I was never allowed a hearing or any opportunity to be heard before the

Emergency Order of November 13, 2020, went into effect, and became criminally

enforceable on or after November 18, 2020, in Sedgwick County, and on or after

November 22, 2020, in the City of Wichita.

FURTHER AFFIANT SAYETH NOT.


(SIGNATURE)

STATE OF KANSAS
COUNTY OF SEDGWICK

Signed and affirmed before me on _November 24, 2020_ by _____

_____

(Signature of notarial officer)

Expiration Date: _1/31/2024_

Terri Ann Best Toal
Notary Public - State of Kansas
My Appt. Expires 1/31/2024

3

ELECTRONICALLY FILED
2020 Nov 30 AM 9:51
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-001825-OT

**AFFIDAVIT OF** _____

COMES NOW, _____, being duly sworn, and affirms the following:

1. My name is _Jeannie Ahrens_ and I am _54_ years old.

2. I am the owner and manager of _The Cowboy Inn_, located at _642 N. St Paul_, in Wichita, (or whatever city), Sedgwick County, Kansas.

3. This affidavit is being submitted in support of the Complaint for Declaratory and Injunctive Relief.

4. In the course of my business, I take the following measures to mitigate the spread of COVID-19, and protect my customers and employees: _Using only disposable glasswear now housekeeping comes 3 times a weak instead of once. Hand sanitizer is sitting out for all to use. Constant Cleaning._

5. Due to the Emergency Order issued on November 13, 2020, I have had to close my establishment at 11 p.m.  This has had the following adverse financial and economic impact on my business: _Paying the Bills have been difficult. I just want to feed my family like everyone else. I had to close one place last March, The New Stadium, due to the shut downs_

It was a live music venue. I had already purchased the Cowboy Inn so I used the shut down to remodel and wait to be open. I spent almost $60,000 on the remodel and licensing after signing a two year lease with one option. A quarter of my lease was up before I even got to open. And now almost half of my lease is up and I have yet been able to open normal hours. This has caused an unbelievable financial burden. The rent nor bills have been waived or cut.

6.  I was never allowed a hearing or any opportunity to be heard before the Emergency Order of November 13, 2020, went into effect, and became criminally enforceable on or after November 18, 2020, in Sedgwick County, and on or after November 22, 2020, in the City of Wichita.

FURTHER AFFIANT SAYETH NOT.

(SIGNATURE)

STATE OF KANSAS
COUNTY OF SEDGWICK

Signed and affirmed before me on _November 24, 2020_ by _____

_____

(Signature of notarial officer)

Terri Ann Best Toal
Notary Public - State of Kansas
My Appt. Expires 1/31/2024

Expiration Date: _1/31/2024_

3

ELECTRONICALLY FILED
2020 Nov 30 AM 9:51
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-001825-OT

**AFFIDAVIT OF** _____

COMES NOW, _____, being duly sworn, and affirms the

following:

1. My name is _Darrin Greiving_, and I am _39_ years old.

2. I am the owner and manager of _Blū Nightclub_,

located at _8715 W. Maple_, in Wichita, (or whatever city),

Sedgwick County, Kansas.

3. This affidavit is being submitted in support of the Complaint for Declaratory

and Injunctive Relief.

4. In the course of my business, I take the following measures to mitigate the

spread of COVID-19, and protect my customers and

employees: _Have followed all Kansas Department of Health guidelines_
_& required mandates/ordinances applicable to us. Furthermore have_
_implemented strickt in-house guidelines to limit any contact such_
_as disposable cups, tong, and sanitab wes. We have posted signs to direct_
_customers of safty precautions & to ask them to wash hands for 20 seconds. Mask_
_signs posted._

5. Due to the Emergency Order issued on November 13, 2020, I have had to

close my establishment at 11 p.m.  This has had the following adverse financial and

economic impact on my business:

_Our business has and is not allowed to operate at the hours_
_that we make the majority of our revenue. This results in_
_running limited staff & contract employers. This has also inhibited_
_our abilites to pay our bills. We have had to drain our savings_

in order to stay "in business". We are unsure how much longer we can continue on this path before we run out of resources. The county "permanetly tabled" our CARES relif that would displace all of the financial burdens from our shoulders.

6. I was never allowed a hearing or any opportunity to be heard before the Emergency Order of November 13, 2020, went into effect, and became criminally enforceable on or after November 18, 2020, in Sedgwick County, and on or after November 22, 2020, in the City of Wichita.

FURTHER AFFIANT SAYETH NOT.


(SIGNATURE)

STATE OF KANSAS
COUNTY OF SEDGWICK

Signed and affirmed before me on _November 23, 2020_ by _____

(Signature of notarial officer)

Terri Ann Best Toal
Notary Public - State of Kansas
My Appt. Expires 1/31/2024

Expiration Date: 1/31/2024

3

ELECTRONICALLY FILED
2020 Nov 30 AM 10:48
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-001825-OT

BLU NIGHTCLUB, et al. et. al.

vs.

MAYOR WHIPPLE, et al. et. al.

**SUMMONS**

# Chapter 60 - Service by Attorney or Process Server

To the above-named Defendant/Respondent:

**COUNCILWOMAN TUTTLE**

**City Hall 455 N Main St, 1st Floor**

**Wichita, KS  67202**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

David L Miller

7200 W 13th St N

Suite 203-204

Wichita, KS 67212

within 21 days after service of summons on you.



Bernadine D. Lumbreras

Clerk of the District Court

Electronically signed  on 11/30/2020 12:29:00 PM

**Documents to be served with the Summons:**

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

ELECTRONICALLY FILED
2020 Nov 30 AM 10:48
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-001825-OT

BLU NIGHTCLUB, et al. et. al.

vs.

MAYOR WHIPPLE, et al. et. al.

**SUMMONS**

## Chapter 60 - Service by Attorney or Process Server

To the above-named Defendant/Respondent:

**COUNCILMAN JOHNSON**

**City Hall 455 N Main St, 1st Floor Wichita, KS 67202**

**Wichita, KS  67202**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

David L Miller

7200 W 13th St N

Suite 203-204

Wichita, KS 67212

within 21 days after service of summons on you.



Bernadine D. Lumbreras

Clerk of the District Court

Electronically signed  on 11/30/2020 12:29:00 PM

**Documents to be served with the Summons:**

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

ELECTRONICALLY FILED
2020 Nov 30 AM 10:48
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-001825-OT

BLU NIGHTCLUB, et al. et. al.

vs.

MAYOR WHIPPLE, et al. et. al.

**SUMMONS**

# Chapter 60 - Service by Attorney or Process Server

To the above-named Defendant/Respondent:

**MAYOR WHIPPLE**
**City Hall 455 N Main St, 1st Floor**
**Wichita, KS  67202**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

David L Miller
7200 W 13th St N
Suite 203-204
Wichita, KS 67212

within 21 days after service of summons on you.



Bernadine D. Lumbreras

Clerk of the District Court
Electronically signed  on 11/30/2020 12:29:00 PM

**Documents to be served with the Summons:**
VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

ELECTRONICALLY FILED
2020 Nov 30 AM 10:48
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-001825-OT

BLU NIGHTCLUB, et al. et. al.

vs.

MAYOR WHIPPLE, et al. et. al.

**SUMMONS**

# Chapter 60 - Service by Attorney or Process Server

To the above-named Defendant/Respondent:

**COUNCILWOMAN CLAYSON**

**City Hall 455 N Main St, 1st Floor**

**Wichita, KS  67202**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

David L Miller

7200 W 13th St N

Suite 203-204

Wichita, KS 67212

within 21 days after service of summons on you.



Bernadine D. Lumbreras

Clerk of the District Court

Electronically signed  on 11/30/2020 12:29:00 PM

**Documents to be served with the Summons:**

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**ELECTRONICALLY FILED**

BLU NIGHTCLUB, et al. et. al.

vs.

MAYOR WHIPPLE, et al. et. al.

2020 Nov 30 AM 10:48
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-001825-OT

**SUMMONS**

## Chapter 60 - Service by Attorney or Process Server

To the above-named Defendant/Respondent:

> **CHIEF RAMSEY**
> **455 N Main St, 4th Floor,**
> **Wichita, KS  67202**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

> David L Miller
> 7200 W 13th St N
> Suite 203-204
> Wichita, KS 67212

within 21 days after service of summons on you.



Bernadine D. Lumbreras

Clerk of the District Court

Electronically signed  on 11/30/2020 12:29:00 PM

**Documents to be served with the Summons:**

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

ELECTRONICALLY FILED

2020 Nov 30 AM 10:48

CLERK OF THE SEDGWICK COUNTY DISTRICT COURT

CASE NUMBER:  2020-CV-001825-OT

BLU NIGHTCLUB, et al. et. al.

vs.

MAYOR WHIPPLE, et al. et. al.

**SUMMONS**

## Chapter 60 - Service by Attorney or Process Server

To the above-named Defendant/Respondent:

**DOUGLAS WILLIAMS**

**7750 N. Wild West Dr.**

**Park Cit, KS  67147**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

David L Miller

7200 W 13th St N

Suite 203-204

Wichita, KS 67212

within 21 days after service of summons on you.



Bernadine D. Lumbreras

Clerk of the District Court

Electronically signed  on 11/30/2020 12:29:00 PM

**Documents to be served with the Summons:**

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

ELECTRONICALLY FILED
2020 Nov 30 AM 10:48
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-001825-OT

BLU NIGHTCLUB, et al. et. al.

vs.

MAYOR WHIPPLE, et al. et. al.

**SUMMONS**

## Chapter 60 - Service by Attorney or Process Server

To the above-named Defendant/Respondent:

**SCOTT WADLE**
**271 W 3rd St N Ste 201**
**wichita, KS  67202**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

David L Miller
7200 W 13th St N
Suite 203-204
Wichita, KS 67212

within 21 days after service of summons on you.



Bernadine D. Lumbreras

Clerk of the District Court
Electronically signed  on 11/30/2020 12:29:00 PM

**Documents to be served with the Summons:**
VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

ELECTRONICALLY FILED
2020 Dec 02 PM 4:18
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-001825-OT

PROOF OF SERVICE

I received this subpoena for *(name of individual and title, if any)* WPD Chief Ramsey

on *(date)* 11.30.2020

*Complete one of the following:*

I served the subpoena by delivering a copy to the named person as follows: To City In A

Dest Per City Clerk C YSSNMAN, I CT

_____ on *(date)* 12.01.2020

or

I returned the subpoena unexecuted because: _____

_____

I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by

law, in the amount of $ _____.

Under K.S.A. 60-303(d)(3) and K.S.A. 28-110, my fees are $ _____ for travel and $ _____

for services, for a total of $ _____.

I declare under penalty of perjury under the laws of the state of Kansas that the foregoing is true

and correct.

Executed on 12.01.2020

_____ D-5924
*Server's signature*

Licensed Private Detective
State of Kansas

B.G. Pate

kpi@mail.com
State License Number D-5924
Kansas Private Investigations
316.210.5058
1631 E. First St, Wichita, KS 67214

Additional information regarding attempted service:

ELECTRONICALLY FILED
2020 Dec 02 PM 4:18
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-001825-OT

PROOF OF SERVICE

I received this subpoena for *(name of individual and title, if any)* _Doug WILLIAMS_

on *(date)* _1.30.2020_

*Complete one of the following:*

I served the subpoena by delivering a copy to the named person as follows: _TO_
_Admin Secretary @ 7750 N Wild West, Park City_
_____ on *(date)* _12.01.2020_

or

I returned the subpoena unexecuted because: _____

_____

I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by

law, in the amount of $ _____.

Under K.S.A. 60-303(d)(3) and K.S.A. 28-110, my fees are $ _____ for travel and $ _____

for services, for a total of $ _____.

I declare under penalty of perjury under the laws of the state of Kansas that the foregoing is true

and correct.

Executed on _12.01.2020_

_____ D-5924
Server's signature

Licensed Private Detective
State of Kansas

B.G. Pate

kpi@mail.com
State License Number D-5924
Kansas Private Investigations
316.210.5058
1631 E. First St, Wichita, KS 67214

Additional information regarding attempted service:

**ELECTRONICALLY FILED**
2020 Dec 02 PM 4:18
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-001825-OT

PROOF OF SERVICE

I received this subpoena for *(name of individual and title, if any)* _Scott Wade_

on *(date)* _11.30.2020_

Complete one of the following:

I served the subpoena by delivering a copy to the named person as follows: _271 W 3rd, Lot_
_# 201 To Cory_ _____
_____ on *(date)* _12.01.2020_

or

I returned the subpoena unexecuted because: _____
_____.

I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by

law, in the amount of $ _____.

Under K.S.A. 60-303(d)(3) and K.S.A. 28-110, my fees are $ _____ for travel and $ _____

for services, for a total of $ _____.

I declare under penalty of perjury under the laws of the state of Kansas that the foregoing is true

and correct.

Executed on: _12.01.2020_

_Server's signature_

Licensed Private Detective
State of Kansas

B.G. Pate

kpi@mail.com
State License Number D-5924
Kansas Private Investigations
316.210.5058
1631 E. First St, Wichita, KS 67214

Additional information regarding attempted service:

ELECTRONICALLY FILED
2020 Dec 02 PM 4:18
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-001825-OT

PROOF OF SERVICE

I received this subpoena for *(name of individual and title, if any)* _Councilwoman Clayson_

on *(date)* _11.30.2020_

*Complete one of the following:*

I served the subpoena by delivering a copy to the named person as follows: _To City Info_
_Desk Per City Clerk, 455 N Main, ICT_ on *(date)* _12.01.2020_

or

I returned the subpoena unexecuted because: _____

_____

I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by

law, in the amount of $ _____.

Under K.S.A. 60-303(d)(3) and K.S.A. 28-110, my fees are $ _____ for travel and $ _____

for services, for a total of $ _____.

I declare under penalty of perjury under the laws of the state of Kansas that the foregoing is true

and correct.

Executed on: _12.01.2020_

_D-5924_

*Server's signature*

Licensed Private Detective
State of Kansas

B.G. Pate

kpi@mail.com
State License Number D-5924
Kansas Private Investigations
316.210.5058
1631 E. First St, Wichita, KS 67214

Additional information regarding attempted service:

ELECTRONICALLY FILED
2020 Dec 02 PM 4:18
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-001825-OT

PROOF OF SERVICE   *Councilman Johnson*

I received this subpoena for *(name of individual and title, if any)*

on *(date)* *1-30 2020*

Complete one of the following:

I served the subpoena by delivering a copy to the named person as follows: *To City Info*
*Desk Per City Clerk, 455 N Main, Ict* on *(date)* *120l.2020*

or

I returned the subpoena unexecuted because: _____

_____

I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by

law, in the amount of $ _____.

Under K.S.A. 60-303(d)(3) and K.S.A. 28-110, my fees are $ _____ for travel and $ _____

for services, for a total of $ _____.

I declare under penalty of perjury under the laws of the state of Kansas that the foregoing is true

and correct.

Executed on *120l.2020*

*D-5924*
Server's signature

Licensed Private Detective
State of Kansas

B.G. Pate

kpi@mail.com
State License Number D-5924
Kansas Private Investigations
316.210.5058
1631 E. First St, Wichita, KS 67214

Additional information regarding attempted service:

ELECTRONICALLY FILED
2020 Dec 02 PM 4:18
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-001825-OT

PROOF OF SERVICE

I received this subpoena for *(name of individual and title, if any)* Mayor Whipple

on *(date)* 11.30.2020

*Complete one of the following:*

I served the subpoena by delivering a copy to the named person as follows: To City Info,

Desk Per City Clerk, 455 NV Rm, Ict

on *(date)* 12.01.2020

or

I returned the subpoena unexecuted because: _____

_____

I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by

law, in the amount of $ _____.

Under K.S.A. 60-303(d)(3) and K.S.A. 28-110, my fees are $ _____ for travel and $ _____

for services, for a total of $ _____.

I declare under penalty of perjury under the laws of the state of Kansas that the foregoing is true

and correct.

Executed on: 12.01.2020

_D5924_

*Server's signature*

Licensed Private Detective
State of Kansas

B.G. Pate

kpi@mail.com
State License Number D-5924
Kansas Private Investigations
316.210.5058
1631 E. First St, Wichita, KS 67214

Additional information regarding attempted service:

ELECTRONICALLY FILED
2020 Dec 02 PM 4:18
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-001825-OT

PROOF OF SERVICE

I received this subpoena for *(name of individual and title, if any)* _Qurack Warren Tuttle_

on *(date)* _11·30·2020_

Complete one of the following:

I served the subpoena by delivering a copy to the named person as follows: _The Cmy Info_
_Desk Per Cmy Clerk, 455 N Main, Wct_ on *(date)* _12·01·2020_

_____

or

I returned the subpoena unexecuted because: _____

_____

I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by

law, in the amount of $ _____.

Under K.S.A. 60-303(d)(3) and K.S.A. 28-110, my fees are $ _____ for travel and $ _____

for services, for a total of $ _____.

I declare under penalty of perjury under the laws of the state of Kansas that the foregoing is true

and correct.

Executed on: _12·01·2020_

_D-5924_

*Server's signature*

Licensed Private Detective
State of Kansas

B.G. Pate

kpi@mail.com
State License Number D-5924
Kansas Private Investigations
316.210.5058
1631 E. First St, Wichita, KS 67214

Additional information regarding attempted service:

ELECTRONICALLY FILED
2020 Dec 02 PM 4:18
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-001825-OT

PROOF OF SERVICE

I received this subpoena for *(name of individual and title, if any)* David Dennis

on *(date)* 1.30.2020

Complete one of the following:

I served the subpoena by delivering a copy to the named person as follows: To
County Clerk, 525 N Main, ICt
on *(date)* 12.01.2020

or

I returned the subpoena unexecuted because: _____

_____

I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by

law, in the amount of $ _____.

Under K.S.A. 60-303(d)(3) and K.S.A. 28-110, my fees are $ _____ for travel and $ _____

for services, for a total of $ _____.

I declare under penalty of perjury under the laws of the state of Kansas that the foregoing is true

and correct.

Executed on: 12.01.2020

Server's signature

Licensed Private Detective
State of Kansas

B.G. Pate

kpi@mail.com
State License Number D-5924
Kansas Private Investigations
316.210.5058
1631 E. First St, Wichita, KS 67214

Additional information regarding attempted service:

**ELECTRONICALLY FILED**
2020 Nov 30 AM 10:48
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-001825-OT

BLU NIGHTCLUB, et al. et. al.

vs.

MAYOR WHIPPLE, et al. et. al.

**SUMMONS**

## Chapter 60 - Service by Attorney or Process Server

To the above-named Defendant/Respondent:

**COMMISSIONER DAVID DENNIS**

**City Hall 455 N Main St, 1st Floor**

**Wichita, KS  67202**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

David L Miller

7200 W 13th St N

Suite 203-204

Wichita, KS 67212

within 21 days after service of summons on you.



Bernadine D. Lumbreras

Clerk of the District Court
Electronically signed  on 11/30/2020 12:29:00 PM

**Documents to be served with the Summons:**
VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

PROOF OF SERVICE

I received this subpoena for *(name of individual and title, if any)* _David Dennis_

on *(date)* _1.30.2020_

*Complete one of the following:*

I served the subpoena by delivering a copy to the named person as follows: _To_
_County Clerk, 525 N Main, 1st_
_____ on *(date)* _12.01.2020_

*or*

I returned the subpoena unexecuted because: _____

_____

I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____.

Under K.S.A. 60-303(d)(3) and K.S.A. 28-110, my fees are $ _____ for travel and $ _____ for services, for a total of $ _____.

I declare under penalty of perjury under the laws of the state of Kansas that the foregoing is true and correct.

Executed on: _12.01.2020_

_D-5924_

*Server's signature*

**Licensed Private Detective**
State of Kansas

B.G. Pate

kpi@mail.com
State License Number D-5924
Kansas Private Investigations
316.210.5058
1631 E. First St, Wichita, KS 67214

Additional information regarding attempted service:

ELECTRONICALLY FILED
2020 Nov 30 AM 10:48
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-001825-OT

<u>BLU NIGHTCLUB, et al. et. al.</u>

vs.

<u>MAYOR WHIPPLE, et al. et. al.</u>

**SUMMONS**

## Chapter 60 - Service by Attorney or Process Server

To the above-named Defendant/Respondent:

**COMMISSIONER MEITZER**

**City Hall 455 N Main St, 1st Floor**

**Wichita, KS  67202**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

David L Miller

7200 W 13th St N

Suite 203-204

Wichita, KS 67212

within 21 days after service of summons on you.



Bernadine D. Lumbreras

Clerk of the District Court

Electronically signed  on 11/30/2020 12:29:00 PM

**Documents to be served with the Summons:**

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

PROOF OF SERVICE

I received this subpoena for *(name of individual and title, if any)* _Co Comr's P. Metzner_

on *(date)* _12.01.2020_

*Complete one of the following:*

I served the subpoena by delivering a copy to the named person as follows: _To County_
_Clerk, 525 N. Main Wichita KS._
_____ on *(date)* _12.02.2020_

or

I returned the subpoena unexecuted because: _____

_____

I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by

law, in the amount of $ _____.

Under K.S.A. 60-303(d)(3) and K.S.A. 28-110, my fees are $ _____ for travel and $ _____

for services, for a total of $ _____.

I declare under penalty of perjury under the laws of the state of Kansas that the foregoing is true

and correct.

Executed on _12.02.2020_

_D-5924_

Server's signature

**Licensed Private Detective**
State of Kansas

B.G. Pate

kpi@mail.com
State License Number D-5924
Kansas Private Investigations
316.210.5058
1631 E. First St, Wichita, KS 67214

Additional information regarding attempted service:

**ELECTRONICALLY FILED**
2020 Nov 30 AM 10:48
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-001825-OT

BLU NIGHTCLUB, et al. et. al.

vs.

MAYOR WHIPPLE, et al. et. al.

**SUMMONS**

## Chapter 60 - Service by Attorney or Process Server

To the above-named Defendant/Respondent:

**MARK SROUFE**
**6501 W 21st St N**
**Wichita, KS  67212**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

David L Miller

7200 W 13th St N

Suite 203-204

Wichita, KS 67212

within 21 days after service of summons on you.



Bernadine D. Lumbreras

Clerk of the District Court
Electronically signed  on 11/30/2020 12:29:00 PM

**Documents to be served with the Summons:**
VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

PROOF OF SERVICE

I received this subpoena for *(name of individual and title, if any)* _Mark Sproufe_

on *(date)* _11.30.2020_

*Complete one of the following:*

I served the subpoena by delivering a copy to the named person as follows: _To Laurel @_
_Seog Co Cake Often Gift Shop, 24600 397th S. Goddard Ks_
_____ on *(date)* _12.02.2020_

or

I returned the subpoena unexecuted because: _____

_____

I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by

law, in the amount of $ _____.

Under K.S.A. 60-303(d)(3) and K.S.A. 28-110, my fees are $ _____ for travel and $ _____

for services, for a total of $ _____.

I declare under penalty of perjury under the laws of the state of Kansas that the foregoing is true

and correct.

Executed on: _12.02.2020_

_D-5924_

*Server's signature*

**Licensed Private Detective**
State of Kansas

B.G. Pate

kpi@mail.com
State License Number D-5924
Kansas Private Investigations
316.210.5058
1631 E. First St, Wichita, KS 67214

Additional information regarding attempted service:

ELECTRONICALLY FILED
2020 Nov 30 AM 10:48
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-001825-OT

<u>BLU NIGHTCLUB, et al. et. al.</u>

vs.

<u>MAYOR WHIPPLE, et al. et. al.</u>

## SUMMONS

## Chapter 60 - Service by Attorney or Process Server

To the above-named Defendant/Respondent:

**DARRELL HAYNES**
**525 N Main St**
**Wichita, KS  67203**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

David L Miller
7200 W 13th St N
Suite 203-204
Wichita, KS 67212

within 21 days after service of summons on you.



B.D. Lumbreras
Bernadine D. Lumbreras

Clerk of the District Court
Electronically signed  on 11/30/2020 12:29:00 PM

**Documents to be served with the Summons:**
VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

PROOF OF SERVICE

I received this subpoena for *(name of individual and title, if any)* Darryl Haynes
on *(date)* 11.30.2020

*Complete one of the following:*

I served the subpoena by delivering a copy to the named person as follows: TO
County Clerk 505 N Main, ICO
_____ on *(date)* 12.01.2020

or

I returned the subpoena unexecuted because: _____
_____

I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____.

Under K.S.A. 60-303(d)(3) and K.S.A. 28-110, my fees are $ _____ for travel and $ _____ for services, for a total of $ _____.

I declare under penalty of perjury under the laws of the state of Kansas that the foregoing is true and correct.

Executed on: 12.01.2020

*Server's signature*

**Licensed Private Detective**
State of Kansas

B.G. Pate

kpi@mail.com
State License Number D-5924
Kansas Private Investigations
316.210.5058
1631 E. First St, Wichita, KS 67214

Additional information regarding attempted service:

ELECTRONICALLY FILED
2020 Nov 30 AM 10:48
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-001825-OT

BLU NIGHTCLUB, et al. et. al.

vs.

MAYOR WHIPPLE, et al. et. al.

**SUMMONS**

**Chapter 60 - Service by Attorney or Process Server**

To the above-named Defendant/Respondent:

**SHERIFF EASTER**

**455 N Main St, 4th Floor,**

**Wichita, KS  67202**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

David L Miller

7200 W 13th St N

Suite 203-204

Wichita, KS 67212                          .

within 21 days after service of summons on you.



Bernadine D. Lumbreras

Clerk of the District Court

Electronically signed  on 11/30/2020 12:29:00 PM

**Documents to be served with the Summons:**

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

PROOF OF SERVICE

I received this subpoena for *(name of individual and title, if any)* Sheriff Jeff Easter

on *(date)* 11-30-2020

Complete one of the following:

I served the subpoena by delivering a copy to the named person as follows: To Clerk
2nd Floor @ Sheriff Admin, 455 N Main, Ict.

_____ on *(date)* 12-01-2020

or

I returned the subpoena unexecuted because: _____

_____

I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by

law, in the amount of $ _____.

Under K.S.A. 60-303(d)(3) and K.S.A. 28-110, my fees are $ _____ for travel and $ _____

for services, for a total of $ _____.

I declare under penalty of perjury under the laws of the state of Kansas that the foregoing is true

and correct.

Executed on 12-01-2020

D-5924

*Server's signature*

**Licensed Private Detective**
State of Kansas

B.G. Pate

kpi@mail.com
State License Number D-5924
Kansas Private Investigations
316.210.5058
1631 E. First St, Wichita, KS 67214

Additional information regarding attempted service:

ELECTRONICALLY FILED
2020 Nov 30 AM 10:48
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-001825-OT

BLU NIGHTCLUB, et al. et. al.

vs.

MAYOR WHIPPLE, et al. et. al.

**SUMMONS**

## Chapter 60 - Service by Attorney or Process Server

To the above-named Defendant/Respondent:

**TOM STOLZ**
**525 N Main St Wichita, KS 67203**
**Wichita, KS  67203**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

David L Miller
7200 W 13th St N
Suite 203-204
Wichita, KS 67212

within 21 days after service of summons on you.



Bernadine D. Lumbreras

Clerk of the District Court
Electronically signed  on 11/30/2020 12:29:00 PM

**Documents to be served with the Summons:**
VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## PROOF OF SERVICE

I received this subpoena for *(name of individual and title, if any)* _Tom Stolz_

on *(date)* _11·30·2020_

*Complete one of the following:*

I served the subpoena by delivering a copy to the named person as follows: _To_
_County Clerk, 525 N. Main, Ict_
_____ on *(date)* _1201·2020_

*or*

I returned the subpoena unexecuted because: _____

_____

I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____.

Under K.S.A. 60-303(d)(3) and K.S.A. 28-110, my fees are $ _____ for travel and $ _____

for services, for a total of $ _____.

I declare under penalty of perjury under the laws of the state of Kansas that the foregoing is true and correct.

Executed on: _1201·2020_

_D-5924_

*Server's signature*

### Licensed Private Detective
State of Kansas

B.G. Pate

kpi@mail.com
State License Number D-5924
Kansas Private Investigations
316.210.5058
1631 E. First St, Wichita, KS 67214

Additional information regarding attempted service:

ELECTRONICALLY FILED
2020 Nov 30 AM 10:48
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-001825-OT

BLU NIGHTCLUB, et al. et. al.

vs.

MAYOR WHIPPLE, et al. et. al.

**SUMMONS**

## Chapter 60 - Service by Attorney or Process Server

To the above-named Defendant/Respondent:

**ADRIENNE BYRNE**
**1015 Stillwell**
**Wichita, KS  67213**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

David L Miller
7200 W 13th St N
Suite 203-204
Wichita, KS 67212

within 21 days after service of summons on you.



Bernadine D. Lumbreras

Clerk of the District Court
Electronically signed  on 11/30/2020 12:29:00 PM

**Documents to be served with the Summons:**
VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## PROOF OF SERVICE

I received this subpoena for *(name of individual and title, if any)* *Adrienne Byrne*

on *(date)* *11/30/2020*

*Complete one of the following:*

I served the subpoena by delivering a copy to the named person as follows: *To Receptionist*
*@ Health Dept, 1700 E. 9th, Ict.*

_____ on *(date)* *12.01.2020*

*or*

I returned the subpoena unexecuted because: _____

_____

I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by

law, in the amount of $ _____.

Under K.S.A. 60-303(d)(3) and K.S.A. 28-110, my fees are $ _____ for travel and $ _____

for services, for a total of $ _____.

I declare under penalty of perjury under the laws of the state of Kansas that the foregoing is true

and correct.

Executed on: *12.01.2020*

*D-5924*

*Server's signature*

**Licensed Private Detective**
State of Kansas

B.G. Pate

kpi@mail.com
State License Number D-5924
Kansas Private Investigations
316.210.5058
1631 E. First St, Wichita, KS 67214

Additional information regarding attempted service:

**ELECTRONICALLY FILED**
2020 Nov 30 AM 10:48
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-001825-OT

BLU NIGHTCLUB, et al. et. al.

vs.

MAYOR WHIPPLE, et al. et. al.

**SUMMONS**

## Chapter 60 - Service by Attorney or Process Server

To the above-named Defendant/Respondent:

**COMMISSIONER CRUSE**

**City Hall 455 N Main St, 1st Floor**

**Wichita, KS  67202**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

David L Miller

7200 W 13th St N

Suite 203-204

Wichita, KS 67212

within 21 days after service of summons on you.



Bernadine D. Lumbreras

Clerk of the District Court
Electronically signed  on 11/30/2020 12:29:00 PM

**Documents to be served with the Summons:**
VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## PROOF OF SERVICE

I received this subpoena for *(name of individual and title, if any)* _Commis Cruse_

on *(date)* _11·30·2020_

*Complete one of the following:*

I served the subpoena by delivering a copy to the named person as follows: _To County_
_Clerk, 525 N Main, ICT_

_____ on *(date)* _12·01·2020_

or

I returned the subpoena unexecuted because: _____

_____

I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by

law, in the amount of $ _____.

Under K.S.A. 60-303(d)(3) and K.S.A. 28-110, my fees are $ _____ for travel and $ _____

for services, for a total of $ _____.

I declare under penalty of perjury under the laws of the state of Kansas that the foregoing is true

and correct.

Executed on: _12·01·2020_

_____ D-5924
*Server's signature*

**Licensed Private Detective**
State of Kansas

B.G. Pate

kpi@mail.com
State License Number D-5924
Kansas Private Investigations
316.210.5058
1631 E. First St, Wichita, KS 67214

Additional information regarding attempted service:

ELECTRONICALLY FILED
2020 Nov 30 AM 10:48
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-001825-OT

BLU NIGHTCLUB, et al. et. al.

vs.

MAYOR WHIPPLE, et al. et. al.

**SUMMONS**

## Chapter 60 - Service by Attorney or Process Server

To the above-named Defendant/Respondent:

**CHRIS LABRUM**
**271 W 3rd St N Ste 101**
**Wichita, KS  67202**

You are hereby notified that an action has been commenced against you in this court. You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

David L Miller
7200 W 13th St N
Suite 203-204
Wichita, KS 67212

within 21 days after service of summons on you.



Bernadine D. Lumbreras

Clerk of the District Court
Electronically signed  on 11/30/2020 12:29:00 PM

**Documents to be served with the Summons:**
VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## PROOF OF SERVICE

I received this subpoena for *(name of individual and title, if any)* Chris LaBrum

on *(date)* 11-30 2020

*Complete one of the following:*

I served the subpoena by delivering a copy to the named person as follows: 2710 3rd, Jct

#101 To WANG

_____ on *(date)* 12.01.2020

or

I returned the subpoena unexecuted because: _____

_____

I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by

law, in the amount of $ _____.

Under K.S.A. 60-303(d)(3) and K.S.A. 28-110, my fees are $ _____ for travel and $ _____

for services, for a total of $ _____.

I declare under penalty of perjury under the laws of the state of Kansas that the foregoing is true

and correct.

Executed on: 12.01.2020

*Server's signature*  D-5924

Licensed Private Detective
State of Kansas

B.G. Pate

kpi@mail.com
State License Number D-5924
Kansas Private Investigations
316.210.5058
1631 E. First St, Wichita, KS 67214

Additional information regarding attempted service:

ELECTRONICALLY FILED
2020 Nov 30 AM 10:48
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-001825-OT

BLU NIGHTCLUB, et al. et. al.

vs.

MAYOR WHIPPLE, et al. et. al.

**SUMMONS**

## Chapter 60 - Service by Attorney or Process Server

To the above-named Defendant/Respondent:

**GAROLD MIMS**

**1001 N Minneapolis St,**

**Wichita, KS  67214**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

David L Miller

7200 W 13th St N

Suite 203-204

Wichita, KS 67212

within 21 days after service of summons on you.



Bernadine D. Lumbreras

Clerk of the District Court

Electronically signed  on 11/30/2020 12:29:00 PM

**Documents to be served with the Summons:**

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

ELECTRONICALLY FILED
2020 Dec 01 PM 1:16
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-001825-OT

BLU NIGHTCLUB, et al. et. al.

vs.

MAYOR WHIPPLE, et al. et. al.

## SUMMONS

## Chapter 60 - Service by Attorney or Process Server

To the above-named Defendant/Respondent:

**GAROLD MINNS**
**1001 N Minneapolis St,**
**Wichita, KS  67214**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

David L Miller
7200 W 13th St N
Suite 203-204
Wichita, KS 67212

within 21 days after service of summons on you.



Bernadine D. Lumbreras

Clerk of the District Court
Electronically signed  on 12/01/2020 03:59:06 PM

**Documents to be served with the Summons:**
VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

PROOF OF SERVICE

I received this subpoena for *(name of individual and title, if any)* *Carole Minns*

on *(date)* *12.01.2020*

*Complete one of the following:*

I served the subpoena by delivering a copy to the named person as follows: *To Jennifer*
*C. G Minns Ofc Ku Med Center, 1010 N. KS.*
_____ on *(date)* *12.02.2020* *Wichra, KS.*

or

I returned the subpoena unexecuted because: _____

_____

I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by

law, in the amount of $ _____.

Under K.S.A. 60-303(d)(3) and K.S.A. 28-110, my fees are $ _____ for travel and $ _____

for services, for a total of $ _____.

I declare under penalty of perjury under the laws of the state of Kansas that the foregoing is true

and correct.

Executed on: *12.02.2020*

*BGD5924*
_____
*Server's signature*

**Licensed Private Detective**
State of Kansas

B.G. Pate

kpi@mail.com
State License Number D-5924
Kansas Private Investigations
316.210.5058
1631 E. First St, Wichita, KS 67214

Additional information regarding attempted service:

ELECTRONICALLY FILED
2020 Nov 30 AM 10:48
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-001825-OT

BLU NIGHTCLUB, et al. et. al.

vs.

MAYOR WHIPPLE, et al. et. al.

**SUMMONS**

# Chapter 60 - Service by Attorney or Process Server

To the above-named Defendant/Respondent:

**COMMISSIONER O'DONNELL**

**City Hall 455 N Main St, 1st Floor**

**Wichita, KS 67202**

You are hereby notified that an action has been commenced against you in this court. You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

David L Miller

7200 W 13th St N

Suite 203-204

Wichita, KS 67212

within 21 days after service of summons on you.



Bernadine D. Lumbreras

Clerk of the District Court

Electronically signed  on 11/30/2020 12:29:00 PM

**Documents to be served with the Summons:**

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF